### Norfleet SAWYER
v.
### Franklin K. BROUGH, Warden, Maryland Penitentiary.

Civ. No. 15810.

United States District Court
D. Maryland.

March 31, 1965.

Kenneth Holniker (court-appointed), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Fred Oken, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

This is a petition by a state prisoner (Sawyer) who, together with a co-defendant (Espin), was convicted by Judge Manley in the Criminal Court of Baltimore of robbery with a deadly weapon and was sentenced to twenty years' imprisonment. Both defendants were represented by the same court-appointed counsel, a member of the bar for thirty-five years, of wide experience in both civil and criminal cases. The convictions of both defendants were affirmed on appeal. Espin and Sawyer v. State, 230 Md. 298, 186 A.2d 589 (1962). An application for relief under the Post Conviction Procedure Act (PCPA) was denied by Judge Grady, after a hearing at which testimony was taken, and an application for leave to appeal was denied. Sawyer v. Warden, 234 Md. 629, 199 A.2d 616 (1964).

In his present petition for a writ of habeas corpus in this Court petitioner has raised eight points, which have been grouped by his attorney into three basic questions, with various steps or facets: (1) Whether petitioner's arrest was illegal, and whether a search of his person incident to the arrest was therefore il-

legal; (2) Whether the indictment under which petitioner was tried was defective "in that the ownership of the property taken was attributed to the wrong person"; and (3) Whether petitioner was denied procedural due process and the adequate assistance of counsel because the same attorney was appointed to represent both defendants under the circumstances set out below.

Although Judge Grady heard whatever testimony Sawyer and his counsel offered, his findings of fact were not such that this Court would be excused from making its own determination of facts as well as applying constitutional tests. This Court has accordingly made findings of fact. It may be noted that they do not conflict with the brief statement of facts made by Judge Grady.

At the hearing in this Court petitioner was represented by competent court-appointed counsel, who called all three of the witnesses who had testified at the criminal trial, as well as another police officer, the co-defendant (Espin) and their trial attorney. Petitioner himself also testified at length. The records of the proceedings in the State courts were offered in evidence. Some of the testimony was admitted, subject to exception, over the objection of respondent. Much of that evidence is probably technically inadmissible, but none of the findings of fact set out below would be affected by the admission or rejection of any of the disputed evidence. From all the evidence, this Court has made the following findings of fact.

■ (1) On January 31, 1962, about 2 a. m., Sawyer and Espin entered a taxicab driven by Clinton E. Washington and asked to be taken to the 800 block of Edmondson Avenue. Espin had his hair fixed like a woman's and was carrying a parasol. When they reached their destination, Sawyer struck Washington in the head with a hammer and cut one of his wrists with a knife. There was a tussle, during which Espin took a bag containing about $25 from Washington. Sawyer and Espin then left the cab and proceeded to George Street, about a block away, where there was a row of vacant houses. Washington reported to his dispatcher over the radio that he had been struck and robbed by two men. The report was relayed to the police, a radio car appeared, and Washington gave the officers a description of the two men and of how they were dressed, and stated that a hammer and a knife had been used in the robbery. That information was also broadcast over the police radio. Officers Portera and Webster, who were in a radio car in the neighborhood, heard both broadcasts, and a few minutes later, as they proceeded down George Street, they saw Espin at the corner of George and Brune Streets and Sawyer coming out of one of the vacant houses nearby. When Sawyer saw the police car he crouched behind the steps of the house and, when the car approached him, dropped a hammer and started to run. Officer Portera noticed that Sawyer had dropped a hammer and also noticed that he fitted the broadcast description of one of the robbers. Officer Portera chased after him, caught him in the basement of a vacant house and arrested him. Officer Webster arrested Espin, and both men were taken in a cruising patrol car to the Western Police Station. Officer Portera retrieved the hammer which Sawyer had dropped, and the money bag which Espin had taken from Washington was found on the street not far from the point where the robbery occurred. Given the description of the robbery and the robbers, and faced with Sawyer's flight, the arresting officer had probable cause to believe that Sawyer had committed the robbery at the time he was arrested. His arrest was legal, as the Court of Appeals of Maryland found in the PCPA proceeding. Sawyer v. Warden, 234 Md. at 631, 199 A.2d at 617 (1964).[1] The evidence indicates that the

_____

1. Immediately after his arrest, Sawyer was searched. The police found $1.30 and a pen knife, but neither the money nor the knife was offered in evidence at the trial.

hammer was taken from the sidewalk and the money was taken from the street, where they had been dropped; but if either of them should be considered as having been seized as an incident to the arrest, they were properly seized.

■ (2) The suggestion that the indictment was defective because it attributed the ownership of the property to the wrong person is frivolous. Each count alleged that the $25 was stolen from the cab driver. The driver's testimony at the trial was to the effect that it was his money, and no effort was made to show the contrary.

(3) The alleged inadequacy of representation by counsel is based upon a claimed conflict of interest arising out of the following circumstances.

Sawyer gave no statement to the police, but Espin gave a signed statement in which he admitted the crime but said he did not know the name of the man who was in the cab with him. Based upon the testimony of the police and of Espin, and contrary to the testimony of Sawyer, this Court finds that Espin did not tell the police that Sawyer was implicated in the robbery.[2] When Sawyer and Espin were arraigned, the Judge asked the State's Attorney whether there was any conflict of interest in the case. The State's Attorney first said: "I think there is"; but after a pause, during which he may have looked at Espin's confession and found that it did not implicate Sawyer, he said: "No. There is no conflict in this case." The Court thereupon appointed the same attorney to represent Sawyer and Espin. Neither of them asked for a separate attorney then or at any time thereafter until Sawyer raised the point during the PCPA hearing before Judge Grady. The attorney who was appointed has been a member of the bar for thirty-five years; he was and

is competent, and has had wide experience in criminal as well as civil cases. He promptly visited the defendants in the jail to discuss their defense and the strategy of the trial; each of them denied that he knew the other, and both denied having given any statement to the police. The defendants elected a trial without a jury, and the case came on for hearing before Judge Manley. The case was well handled by defendants' attorney, who vigorously attacked the evidence of identification. The attorney was surprised when Espin's confession was offered, in view of Espin's statement to him. He cross-examined the officers about the taking of the statement, and made sure that it was admitted only against Espin and not against Sawyer.

■ The attorney testified in this Court that he reviewed the statement when it was offered and that he did not feel then, nor does he feel now, that any conflict of interest arose at that time, in view of the fact that Espin's confession did not implicate Sawyer. He testified that if Espin's statement had implicated Sawyer he would have thought that there was a conflict. The attorney further testified that if the case had been before a jury he might have been worried, but that he had complete confidence in Judge Manley and that he does not think now that the statement hurt Sawyer. The attorney also testified that he consulted with his clients after the confession was produced, and thereafter they decided to stick by their decision not to take the stand because they did not wish their prior records to come before the court.

Judge Manley evidently saw no conflict, because he did not interrupt the trial and, as noted above, neither defendant ever offered any objection until Sawyer raised the point during his PCPA hearing before Judge Grady.[3] Sawyer was

---

2. Both Sawyer and Espin were identified by Washington in a line-up at the Central Police Station.

3. In the opinion which he filed after that hearing, Judge Grady stated:
   "At the hearing on this petition the additional contention was made that the

petitioner was not adequately represented by his court-appointed trial counsel for the reason that one attorney had been appointed by the court to represent both the petitioner and his co-defendant and that during the trial of his case a conflict of interest between the petitioner and his co-defendant became apparent.

ML901

represented in the PCPA proceeding by a new court-appointed lawyer, who filed an application for leave to appeal from Judge Grady's adverse decision, in which he made the same arguments which Sawyer's present attorney is now making. The Court of Appeals denied the application, Sawyer v. Warden, supra, saying:

"Judge Grady found as a fact, after listening to the testimony of the attorney who represented Sawyer at the trial, that the applicant had been well represented by a lawyer who has been practicing for about thirty-five years. The defendants were tried together but Espin's confession was introduced only against him. As mentioned before, the case was tried by the court without a jury, and an examination of the record extract of the applicant's trial printed for his appeal reveals no prejudice to Sawyer. Thus, his last claim is insubstantial. Cf. Pressley v. State, 220 Md. 558, 155 A.2d 494." 234 Md. at 631, 199 A.2d at 617.

The leading case on this point is Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In that case there were four defendants and the same attorney was appointed to represent two of them, Glasser and Kretske, although Glasser had stated that he wished the undivided assistance of counsel of his own choice. The attorney, Stewart, failed to object on Glasser's behalf to certain statements, despite the fact that when the trial court broached the possibility of Stewart's appointment for Glasser, Stewart told the court that statements of that nature were not binding on Glasser. The Supreme Court noted: "Irrespective of any conflict of interest the additional burden of representing another party may conceivably impair counsel's effectiveness." 315 U.S. at 75, 62 S.Ct. at 467. The Court continued:

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. Snyder v. Massachusetts, 291 U.S. 97, 116 [54 S.Ct. 330, 336, 78 L.Ed. 674]; Tumey v. Ohio, 273 U.S. 510, 535 [47 S.Ct. 437, 445, 71 L.Ed. 749]; Patton v. United States, 281 U.S. 276, 292 [50 S.Ct. 253, 256, 74 L.Ed. 854]. And see McCandless v. United States, 298 U.S. 342, 347 [56 S.Ct. 764, 766, 80 L.Ed. 1205]. Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by

It is alleged that this conflict of interest existed because the petitioner's co-defendant had made a confession to the police and that the court-appointed trial attorney was not aware of the co-defendant's confession until it was produced during the trial of the petitioner and the co-defendant.

"The petitioner's court-appointed trial attorney, Dallas F. Nicholas, testified that he has been a practicing attorney for a period of approximately thirty-five years and that he did not, at the time of trial, nor does he today believe that there was any conflict of interest between the petitioner and his co-defendant and that in representing the petitioner he protected all of the petitioner's rights.

"The opinion of the Court of Appeals affirming the petitioner's conviction reveals that none of the contentions now made in these proceedings were raised on direct appeal. These contentions not having been raised in the trial court, nor on direct appeal to the Court of Appeals, cannot be raised in a post conviction proceeding. Ralph v. Warden, 230 Md. 616 [185 A.2d 366]. Also in Jordan v. State, 221 Md. 134 [156 A.2d 453], in commenting on Jackson v. Warden, 218 Md. 652 [146 A.2d 438]. The court said, 'the Jackson case, therefore, is direct authority for the proposition that failure to raise a contention on appeal from judgment and sentence constitutes a waiver which keeps the complainant from having the point considered in the post conviction procedure case'."

insisting, or indeed, even suggesting that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court. In conspiracy cases, where the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant, it is especially important that he be given the benefit of the undivided assistance of his counsel without the court's becoming a party to encumbering that assistance. Here the court was advised of the possibility that conflicting interests might arise which would diminish Stewart's usefulness to Glasser. Nevertheless Stewart was appointed as Kretske's counsel. Our examination of the record leads to the conclusion that Stewart's representation of Glasser was not as effective as it might have been if the appointment had not been made. We hold that the court thereby denied Glasser his right to have the effective assistance of counsel, guaranteed by the Sixth Amendment. This error requires that the verdict be set aside and a new trial ordered as to Glasser.

"But this error does not require that the convictions of the other petitioners be set aside. To secure a new trial they must show that the denial of Glasser's constitutional rights prejudiced them in some manner, for where error as to one defendant in a conspiracy case requires that a new trial be granted him, the rights of his co-defendants to a new trial depend upon whether that error prejudiced them. Agnello v. United States, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145]; United States v. Socony-Vacuum Oil Co., 310 U.S. 150 [60 S.Ct. 811, 84 L.Ed. 1129]; Rossi v. United States [9 Cir.] 278 F. 349; Belfi v. United States [3 Cir.] 259 F. 822; Browne v. United States [2 Cir.] 145 F. 1; Dufour v. United States, 37 App.D.C. 497. Kretske does not contend that he was prejudiced by the appointment, and we are clear from the record that no prejudice is disclosed as to him." 315 U.S. 75–77, 62 S.Ct. 467.

In the instant case neither defendant ever asked for separate counsel or indicated any conflict, either to the trial court or to the experienced attorney who was appointed to represent them. The attorney carefully preserved Sawyer's rights when Espin's statement was offered. The attorney's confidence in the ability and fairness of Judge Manley is shared by this Court. Judge Manley saw no conflict, originally or during the trial.

It is true that experience in recent years has confirmed the wisdom of the statement in the Glasser opinion that: "Irrespective of any conflict of interest the additional burden of representing another party may conceivably impair counsel's effectiveness." 315 U.S. at 75, 62 S.Ct. at 467. Both state and federal courts are increasingly inclined to appoint separate counsel in almost all cases, to avoid the possibility of conflict and to assure the maximum effectiveness of the counsel appointed. But as recently as 1964, in United States v. Dardi, 330 F.2d 316, the Second Circuit noted:

"Since Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), it has been clear that some conflict of interest must be shown before an appellant can successfully claim that representation by an attorney also engaged by another defendant deprived him of his right to counsel." 330 F.2d at 335.

See also Sanders v. United States, 4 Cir., 183 F.2d 748, 749 (1950); United States v. Luciano, 4 Cir., 343 F.2d 172, (March 3, 1965); United States v. Bentvena, 2 Cir., 319 F.2d 916 (1963), and cases cited at p. 937; cf. Case v. State of North Carolina, 4 Cir., 315 F.2d 743 (1963). There has been no claim or showing that the representation was inadequate in any other way.

After carefully considering all of the evidence, this Court concludes that Sawyer was not denied his right to have the effective assistance of counsel, guaranteed by the Constitution.

The relief prayed is hereby denied and the petitioner is hereby remanded to the custody of the respondent.