## BERNARD K. DAVENPORT *v.* STATE OF MARYLAND

[No. 323, September Term, 1968.]

*Decided May 27, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Rolf A. Quisgard, Jr.,* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert C. Stewart, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant Bernard K. Davenport and his codefendant Lena Williams were jointly tried and convicted by the court sitting without a jury of two armed robberies committed upon taxicab drivers. In addition, appellant was found guilty of unlawfully possessing narcotics and his codefendant was separately found guilty of committing the armed robbery of a taxicab driver on February 21, 1968. Each was sentenced to consecutive five-year terms on each of their three convictions, to be served under the jurisdiction of the Department of Correction. On this appeal from his convictions, the appellant Davenport contends that because the same attorney represented both him and his codefendant Williams at the trial and be

cause there was a conflict of interest between their respective positions, he was denied the effective assistance of counsel.

The record discloses that the trial was begun on July 22, 1968 with William Goldstein appearing as privately retained counsel for both the appellant and his codefendant Williams. At the outset of the proceedings, Goldstein informed the court that while he had received notice that the codefendant's case was ready for trial, he had received no such notice with respect to appellant's case. To this the court clerk replied that notice of appellant's case had not been sent because no appearance of counsel had been entered on appellant's behalf. At this point, the court suggested that the State proceed with the case against Williams, but the State's Attorney countered by stating that he was ready to proceed with the cases against both appellant and Williams—that it was Goldstein's responsibility to have checked the docket and to have ascertained therefrom that both cases were set for joint trial on the same date. At the court's suggestion, counsel for the parties then conferred, as a result of which it was agreed to proceed with a joint trial on all the charges, with the understanding that appellant be afforded additional time at the conclusion of the State's case to locate witnesses on his behalf, if necessary. Against this background, appellant was arraigned and the codefendant was rearraigned, each entering pleas of not guilty to all charges, and electing trial by court.

At the trial, the State adduced evidence which showed that three taxicab drivers had been robbed—the first on February 21, 1968 by a woman, and thereafter on March 20 and 25, 1968 by a woman and a man, after they had driven their passengers to their destination in the Cherry Hill section of Baltimore City. Each robbery had been perpetrated at knifepoint, and in each case the victims had been able to give the police a description of the robbers, including the fact that the woman had worn a gold-colored coat. The March 25 robbery had occurred when the codefendant (who had been identified at a pre-

trial lineup and was also identified at trial), arrived by taxicab in front of apartment buildings at 1002 and 1004 Shellbanks Court and went inside 1004 Shellbanks Court for the declared purpose of obtaining the fare therein, only to return in the company of the appellant (who was identified at the preliminary hearing and was also identified at trial), and demanded the taxicab driver's money. Appellant and codefendant Williams were also identified at the trial as the robbers by the victim of the March 20 robbery—an extrajudicial identification of each having also been made by the victim.

Police Officer John H. Hennessey testified that on March 27, 1968 he went to the codefendant's apartment at 1002 Shellbanks Court for the purpose of investigating a Community Relations Department complaint of child beating and juvenile narcotics use at those premises; that upon speaking with the codefendant, he observed that she fitted the description on the wanted suspects list of the woman sought for the recent series of taxicab robberies in the area; that he left her apartment to return to his patrol car and check the description on the wanted suspects list, and soon thereafter she emerged from the building wearing a gold-colored coat; and that he placed her under arrest and took her to the police station where she was charged with the taxicab robberies and incarcerated.

Officer Hennessey testified that when the codefendant was arrested she had refused to speak with the police; that she was informed that she was going to be placed in a lineup the next day and was permitted to telephone her attorney; that the next day he (Hennessey) stopped by her cell to inquire whether she had requested her attorney to be present at the lineup, and she replied no, but that she was willing to participate in it without her attorney being present, and that now she wanted to speak with the police. Officer Hennessey stated that she then informed him that "she had committed four cab holdups" in the "Cherry Hill area" with the aid of "a brown-handled butcher knife" and that "Bernard Davenport

was with her." Goldstein promptly moved to strike anything in the codefendant's statement "in reference to Mr. Davenport," and the court responded that "I will strike it as to Davenport and also note in the record that there has been no request for separate trials in this case, but the reference to Davenport is stricken." Officer Hennessey testified that Williams revealed no further detail to the police when she made that statement. He also stated that "[o]n the basis of the information I received from Mrs. Williams, I obtained a warrant for Bernard Davenport," and he was arrested pursuant to it, at which time a search of his person uncovered 32 capsules containing heroin.

Goldstein cross-examined the officer at some length as to the circumstances before and after the codefendant made her statement to the police. The only questioning concerning the content of her statement was as follows:

"Q. * * * Now, you say you picked Mr. Davenport up on a warrant, is that correct?

A. That's correct.

Q. And this warrant was based on what Mrs. Williams told you?

A. On the information received from Mrs. Williams, correct."

At the completion of the cross-examination of Officer Hennessey, the appellant asked the trial judge, "May I have a word with you, please," to which the court replied, "You have to speak to your lawyer and he will advise you."

Upon completion of the State's case, the codefendant elected to testify. She categorically denied any participation in or knowledge of the taxicab robberies. While admitting that she had previously been acquainted with the appellant, she denied having been with him on the days when the robberies had occurred. She stated that she had never told the police that she had participated in robberies, but that if the officer said that she made the statement that he testified to, "* * * I must have been

having delusions because I was having a withdrawal of drugs, off of drugs," inferring that the content of her statement was untrue.

The trial was then continued until July 26 to permit appellant time to locate an alibi witness. Upon resumption of the proceeding, the court noted that it had received a letter from the appellant in the interim to the effect that he had asked Goldstein to obtain a separate jury trial for him and to make certain motions on his behalf, none of which had he done. Because of these alleged omissions he wanted the assistance of other counsel and his lack of further finances required that any new counsel be court-appointed. This letter, and copies of two other letters which appellant had purportedly sent to Goldstein when he was awaiting trial were made part of the record by the court. One of the letters, dated May 21, 1968, contained the following language:

> "When we last talked, we spoke about me having a separate trial. You told me that this would be hard to do since Lena had gave a statement. I was reading in the paper that the Supreme Court pass a law that would give me a trial by myself. Have you got that inspection and discovery motion yet?"

The other letter was dated July 1, 1968 and requested Goldstein to "* * * file for me a 'Subpoena Duces Tecum,' " but made no further mention of a severance or jury trial.

The court then inquired whether "* * * the reasons that I have stated which seem to be the reasons in your correspondence that you sent me, are they the reasons that you are asking for another lawyer," namely "[y]ou wanted a separate trial; you wanted a Jury Trial; and there were motions for discovery you wanted him to file?" Appellant responded in the affirmative. When next asked why he waited this long to bring these matters to the court's attention, he replied:

> "MR. DAVENPORT: I asked you Monday when we were at Court if I could have a word with

you. You told me, 'No', I would have to tell my lawyer and he would have to tell me.

THE COURT: The record will show, I believe, an awful lot of discussion back and forth and you did speak to your lawyer?

MR. DAVENPORT: Yes, I did. The reason why I continued as far as I did, Mr. Goldstein told me to go along and cooperate, that he's doing everything he could do. I am not satisfied with what Mr. Goldstein has done for me."

He later expanded upon his explanation:

"MR. DAVENPORT: He come over to the Baltimore City Jail to see me. My father paid him to represent me. He asked how was I pleading. I told him, 'Not guilty' and I wanted a separate trial, on this date. Also later I sent a letter telling him I wanted a separate trial and a Jury trial. I didn't hear from Mr. Goldstein until about a month and a half later. This is when he came over to the jail to discuss this letter about the subpoena. He didn't mention anything about it. He asked who was my witnesses, so forth and so on. He said to go on along with him, that he thought you're a reasonable Judge and I would make out better with you. This is why I didn't mention anything Monday when we came to Court about separate trials or Jury trials because I was going along with Mr. Goldstein."

In reply, Goldstein stated that "* * * the reason of the retainer by Mr. Davenport was on the basis that he was a part, he was one of the Defendants in the trial and he asked me to represent him and I told him of his different rights, separate trials he could file and he had never said he wanted one"; that he spoke with him after the first day of trial and "* * * he didn't mention a separate trial then nor did he mention a Jury trial nor did he mention dissatisfaction with me"; and that the State had opened its entire file on the case to him.

Denying appellant's request for new counsel, the court ruled that at the outset of the proceedings,

> "We had just finished going through the specifics with Miss Williams regarding her right to a Jury trial and Mr. Davenport, of course, was standing right here. When his turn came, the Court trial was requested through his Counsel. * * * In a case like this, Mr. Davenport could have asked for a separate trial, and in fact, he knew he had the right to a separate trial. * * * I do not see any dereliction of duty on Counsel's part. * * * You had these rights but constitutional rights can be waived and I have no trouble finding they were knowingly waived in this case so I am not going to halt the case now under these circumstances."

Thereupon appellant elected to testify and admitted casually knowing the codefendant, but denied being with her on the days that the robberies had occurred and denied participating in any robberies. He further admitted that he had possessed narcotics at the time of his arrest. His alibi witness was not produced and there was no further testimony on behalf of the codefendants or in rebuttal.

The thrust of appellant's principal argument appears to be this: that as he was arrested on a warrant issued following his codefendant Williams's statement implicating him in the robberies, Goldstein could not undertake, on his behalf, to impeach the testimony of Williams, whom he also represented, and to this extent at least a conflict of interest resulted depriving him of the effective assistance of counsel.

The mere representation of two defendants at the same trial by one lawyer does not of itself establish a conflict of interest. *McCoy v. Warden,* 234 Md. 616; *Hess v. State,* 4 Md. App. 508. Some conflict of interest must be shown before it can be claimed that representation by an attorney also engaged by another defendant deprived

him of his right to the effective assistance of counsel. *United States v. Dardi*, 330 F. 2d 316 (2nd Cir.) ; *Sawyer v. Brough*, 239 F. Supp. 898 (D. C. Md.). In *Pressley v. State*, 220 Md. 558, 562, it was held that "To show prejudice there must be revealed an actual or imminently potential conflict of interest which prevented the lawyer from impartially and adequately representing his clients." Moreover, it was held in *Pressley* at page 563 that "if the convicted one did not make known to the trial court his objection to the lawyer appointed for him, or his claim of conflict of interest, and no prejudice is revealed by the record, he cannot successfully maintain on appeal that there was reversible error by reason of the joint representation."

It appears from the record that appellant made no complaint with reference to Goldstein's representation of him until the trial was in its final stages. The gist of his dissatisfaction revolved around Goldstein's alleged failure to secure for him a separate jury trial, to take advantage of certain discovery procedures, and to file motions on his behalf. The record does not disclose that appellant ever objected to Goldstein also representing his codefendant Williams, nor does it indicate that he made known to the trial court any claim of conflict of interest.

It is apparent that appellant's defense, like that of Williams, was a complete denial of complicity in the robberies. Williams disavowed her confession and thus denied implicating appellant in the crimes, so that it was unnecessary to impeach her testimony on appellant's behalf. When the statement of Williams implicating appellant was introduced through the police officer, Goldstein promptly moved to limit its effect to Williams only and the trial court so ruled. Under these circumstances, appellant's defense and that of Williams were not diverse or conflicting. So viewed, we do not think that Goldstein's defense of appellant was other than impartial, was in no way inhibited by the joint representation, and the appellant suffered no prejudice thereby.[1]

---

1. It may have been preferable had appellant elected a sep-

The trial judge found as a fact that appellant knew of his right to obtain a separate jury trial, but nevertheless agreed to proceed with a joint trial with the codefendant Williams, and so waived his right to such a separate trial. We think the record supports that conclusion.

Appellant further appears to argue that counsel was incompetent for failure to enter his appearance in the lower court prior to trial, in failing to appear at the arraignment, in failing to consult with appellant prior to the trial, in failing to file certain motions and to take advantage of discovery procedures available to him, and, in general, that appellant's performance at trial was unsatisfactory. While the record does show that appellant requested new counsel toward the end of the trial, the refusal of the trial judge to discharge counsel at that time would not constitute error where there is nothing to show that the attorney was not competently representing his client. See *Johnson v. State*, 237 Md. 283. The test for determining the competency of trial counsel is whether, under all the circumstances of the particular case, counsel was so incompetent that the accused was not afforded genuine and effective legal representation. *Reid v. Warden*, 5 Md. App. 199; *Green v. Warden*, 3 Md. App. 266. On the record before us, the trial judge seemingly found as a fact that counsel did avail himself of pretrial discovery procedures open to him, and was otherwise completely familiar with the appellant's case. But there was no ruling, as such, by the trial judge on the competency of appellant's counsel, and we decline to decide this issue on the record before us. See *Boswell v. State*, 5 Md. App. 571.

*Judgments affirmed.*

---

arate trial to prevent reference to the codefendant's confession which implicated him. But since he argued that his arrest, being based on his codefendant's statement, was illegal and that, consequently, the seizure of narcotics from his person at that time was likewise illegal, the State would in any event be entitled to show, even at a separate trial, that the arrest was based on probable cause emanating from information received from the codefendant. See *Boone v. State*, 2 Md. App. 80.