AUSTIN, Appellant v. ERICKSON, Respondent

(195 N.W.2d 395)

(File No. 10898. Opinion filed March 7, 1972)

**Marvin K. Bailin, Christopherson & Bailin,** Sioux Falls, for plaintiff and appellant; **Robert Allen Sedler,** Lexington, Ky., of counsel.

**Gordon Mydland,** Atty. Gen., **Walter Andre,** Asst. Atty. Gen., **Roger A. Schiager,** Sp. Asst. Atty. Gen., Pierre, for defendant and respondent.

WINANS, Judge.

Donna Jean Austin, plaintiff and appellant in this proceeding, appeals from the judgment of the Circuit Court of the Second Judicial Circuit, Minnehaha County, entered on October 28, 1970, denying her application for a writ of habeas corpus, and quashing the writ. Plaintiff had been convicted by a jury of the offense of first degree manslaughter in the Circuit Court, Seventh Judicial Circuit, Pennington County, on February 23, 1967, and was sentenced to life imprisonment. Mrs. Austin and her companion, Ronnie Goode, were separately tried on the charge of killing Mrs. Austin's two and a half year old son, William L. Doty, who died October 8, 1966. Goode was sentenced to a term of 25 years in the state penitentiary. The defendants perfected separate appeals to this court. The conviction of Mrs. Austin was affirmed by this court, State v. Austin, Nov. 19, 1969, 84 S.D. 405, 172 N.W.2d 284. The conviction of Goode was reversed. State v. Goode, Nov. 5, 1969, 84 S.D. 369, 171 N.W.2d 733. The two cases cited give a complete resume and procedural history and should be referred to for a more complete understanding of the questions presented in this habeas corpus proceeding of Mrs. Austin. Even though they were tried separately on the charge of first degree manslaughter, both were represented by the same court-appointed attorney. It is this fact which gives rise to the issues presented by her.

In the trial of the manslaughter charges, Mrs. Austin was tried first. At her trial Goode was called as a witness by their common counsel. Before Goode testified the Court advised him of his privilege against self-incrimination, and specifically stated that it would permit Mrs. Austin's counsel, who would be examining him, to prompt him to claim the privilege.

It is the claim of the plaintiff in this proceeding that she was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States because, she claimed, the representation of her by the same counsel who represented Goode, a defendant charged with the same offense arising out of the same transaction, necessarily created a conflict of interest with respect to both defendants, and that it is not necessary that each defendant specifically delineate the prejudice suffered as a result of the conflict of interest. She further claimed that, even if proof of specific prejudice is required, she has demonstrated she has been prejudiced by the multiple representation in that the conflict of interest prevented appointed counsel from impartially and adequately representing her.

In State v. Buffalo Chief*, January 24, 1968, 83 S.D. 131, 155 N.W.2d 914, the plaintiff assigned error because there was a consolidation of the action against him for manslaughter in the first degree with that of defendant Gayton. Buffalo Chief made the claim that he was deprived of his right to effective assistance of counsel, guaranteed by Amendment VI of the United States Constitution, "the claim being made defendants had conflicting interests yet were represented by the same counsel". This court held, "The fact one attorney represents two defendants charged with participation in the same crime is not ipso facto evidence of inadequate representation, Curry v. State, 36 Wis.2d 225, 152 N.W.2d 906, and the record does not indicate any such result." Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, relied upon by both appellant and the state in their respective briefs, must be read in light of the peculiar facts pertaining to the case. It is no doubt the final authority binding upon this court,

---

*See 297 F.Supp. 687; 425 F.2d 271 (8 Cir. 1970)

as well as all other courts. We accept it as such. We distinguish our case, however, from Glasser, supra, in that in Glasser the court said,

> "Admittedly the case against Glasser is not a strong one. * * * This is significant in relation to Glasser's contention that he was deprived of the assistance of counsel contrary to the Sixth Amendment. In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt."

In our case the evidence of guilt is overwhelming. It was predicated on cruel and wanton acts and conduct against her little child. In Glasser, too, the United States District Judge had appointed Glasser's retained counsel to represent a codefendant. This was done despite the protestation of Glasser who notified the appointing judge that the interest of Glasser and his codefendant might be inconsistent and in conflict. The court asked attorney Stewart, Glasser's retained attorney, whether he could act as Kretske's attorney. Kretske was a codefendant. The attorney in reply to that question made this statement,

> "May I make this statement about that comment, judge? We were talking about it — we were all trying to get along together. I filed an affidavit, or I did on the behalf of Mr. Glasser pointing out some little inconsistency in the defense, and the main part of it is this: There will be conversations here where Mr. Glasser wasn't present, where people have seen Mr. Kretske and they have talked about, that they gave money to take care of Glasser, that is not binding on Mr. Glasser, and there is a divergency there, and Mr. Glasser feels that

if I would represent Mr. Kretske the jury would get an
idea that they are together, and all the evidence —
* * *."

Glasser in his appeal urged that the court's appointment of
Stewart as counsel for Kretske embarrassed and inhibited Stew-
art's conduct of his defense in that it prevented Stewart from
adequately safeguarding Glasser's right to have incompetent
evidence excluded and from fully cross-examining the witnesses
for the prosecution. The Supreme Court of the United States found
this was true and said, "The important fact is that no objection
was offered by Stewart on Glasser's behalf to the statements
complained of, and this despite the fact that, when the court
broached the possibility of Stewart's appointment, Stewart told
the Court that statements of this nature were not binding on
Glasser. That this is indicative of Stewart's struggle to serve two
masters cannot seriously be doubted." The Court held there was
an actual conflict of interest and stated,

> "Our examination of the record leads to the conclusion
> that Stewart's representation of Glasser was not as effec-
> tive as it might have been if the appointment had not
> been made. We hold that the court thereby denied
> Glasser his right to have the effective assistance of coun-
> sel, guaranteed by the Sixth Amendment. This error
> requires that the verdict be set aside and a new trial
> ordered as to Glasser.
>
> But this error does not require that the convictions
> of the other petitioners be set aside. To secure a new
> trial they must show that the denial of Glasser's con-
> stitutional rights prejudiced them in some manner,
> * * *. Kretske does not contend that he was pre-
> judiced by the appointment, and we are clear from the
> record that no prejudice is disclosed as to him. Roth
> argues the point, but he was represented throughout the
> case by his own attorney. We fail to see that the denial
> of Glasser's right to have the assistance of counsel
> affected Roth."

Even under all the peculiar circumstances of the Glasser case the opinion was by a divided court. Mr. Justice Frankfurter stated in a dissent, "The Chief Justice and I are of the opinion that the conviction of Glasser, as well as that of his co-defendant, should stand."

Mrs. Austin in her prior appeal in State v. Austin, supra, asserted her claim that she should have been represented by a lawyer other than the one who was representing Goode, and that claim of error was decided adversely to her, in the following language:

> "Defendant asserts that she should have been represented by a lawyer who was not at the same time representing Goode. The mere fact that she and Goode were represented by the same lawyer, does not of itself, establish a conflict of interest depriving her of effective assistance of counsel. Watkins v. Wilson, 9 Cir., 408 F.2d 351; Curry v. State, 36 Wis.2d 225, 152 N.W.2d 906; Davenport v. State, 7 Md.App. 89, 253 A.2d 768. She has not attempted to show any conflict of interest which prevented appointed counsel from impartially and adequately representing her. In fact, Goode's testimony as a witness on her behalf supported her claim of innocence and tended to cast the responsibility upon himself."

In State v. Goode, supra, decided a couple of weeks prior to the Austin case, this Court found that as to Goode there was prejudice because of the dual representation of the defendants by the same counsel, but in the Goode case the prejudice was particularly based on the fact that he had been called to testify for and on behalf of Mrs. Austin, which he did, and then at his own trial, such testimony as he had given in the Austin case was used against him and apparently supplied proof of his own guilt as to certain elements of the crime which the State had otherwise not proven. The language taken from the Goode case is very interesting and in part is as follows:

"At the trial of Mrs. Austin, Goode was called. to testify by their jointly assigned counsel. Although advised by the court of his constitutional right to refuse to testify to any matter which might tend to incriminate him, Goode testified fully and in detail about his relationship with Mrs. Austin and his care and handling of the deceased child. He related how he took care of the child while Mrs. Austin worked. He admitted using physical force as disciplinary measures. On the day of the child's death he admitted shaking the child shortly after which the boy was rushed to the hospital and died. His testimony could serve but one purpose — to deflect the glare of guilt away from Mrs. Austin. Apparently it was not intended or anticipated the state would or could use his testimony against him at his trial.

The dilemma of defense counsel is illustrated in the following occurrence during the course of Goode's direct examination at the Austin trial. In response to defense counsel's questioning Goode was relating how on one occasion the Doty child had refused to obey an order and was being defiant. Goode testified he put the child over his knee and 'swatted him twice with my hand'. At this point his counsel moved to strike the statement as it might tend to 'incriminate this defendant in a later charge against him.' The court denied the motion and counsel stated: 'That's all right. I'm making the motion. Of course, I am trying to defend this defendant, as well. All right. Now, you understand, Ron, you don't need to say anything, but you can, if you wish, say everything. But you understand that you are supposed to say what Donna did. This charge is against Donna.   *   *   * Go ahead and tell us the whole thing; or tell us what you want to.'

During Goode's subsequent trial his prior testimony in the Austin case was read into the record. This evidence was very incriminating and damaging. It fulfilled the State's burden of proof as to certain elements of the crime charged which were not otherwise proven."

■ It appears that this Court has decided by its opinions in State v. Austin, supra, and State v. Goode, supra, that in having the defendant Goode testify in her case at a time when both were represented by the same counsel, she was benefited or at least the attempt was made to assist her by having Goode take the blame. Under these circumstances we cannot find that she has been prejudiced and as to her, at least, there was no conflict of interest. We quote from an Iowa Supreme Court case decided September 2, 1970, State v. Gatewood, Iowa, 179 N.W.2d 520:

"We have recently dealt with this problem in State v. Karston, 247 Iowa 32, 36, 72 N.W.2d 463, 466, and in Janvrin v. Haugh, Iowa, 171 N.W.2d 275. In the Karston case we granted a new trial upon finding that a conflict of interest prevented counsel from giving Karston effective assistance. In the Janvrin case, where counsel represented four defendants all charged with commission of the same crime, we held there was not a denial of effective assistance of counsel because there was no conflict shown.

This is in harmony with the holding of courts generally that appointment of counsel to represent multiple defendants is not by itself a violation of the constitutional guarantee of effective assistance of counsel. There must also be a conflict of interest." (citations omitted)

We have carefully examined the record and we are convinced from such examination and the authorities that Mrs. Austin has not shown a conflict of interest or any prejudice to her by the dual representation of herself and Goode by the same attorney.

■ It does not follow that because this court found there was prejudice and resulting harm to Goode by such dual representation the same result must of necessity be made as to Austin. We quote from Campbell v. United States, 1965, 122 U.S. App.D.C. 143, 352 F.2d 359:

"We are not setting up a rule that each co-defendant must be independently represented in every case. We hold only that a trial judge has a responsibility to assure that co-defendants' decision to proceed with one attorney is an informed decision. Since the trial judge herein apparently failed to fulfill this responsibility and Glenmore was clearly prejudiced by the fact that he shared an attorney with his co-defendant, his conviction must be reversed.

The record as to Campbell presents a different situation and we are unable to perceive anything indicating that his defense suffered from sharing an attorney with Glenmore. We find no basis for disturbing the judgment of conviction as to him. Cf. Glasser v. United States, supra, 315 U.S. at 76-77, 62 S.Ct. 457, [86 L.Ed. 680]; Wynn v. United States, supra, 107 U.S.App.D.C. at 191 275 F.2d at 649."

The judgment quashing the writ is affirmed.

HANSON, P. J., and BIEGELMEIER, J., concur.

WOLLMAN, J., dissents.

DOYLE, J., not participating.

WOLLMAN, Judge (dissenting).

I believe that appellant has demonstrated that she suffered prejudice as a result of the conflict of interest under which her attorney labored. At the close of the state's case, if not before that time, it should have been apparent to all concerned that there was an obvious conflict between appellant's position and Goode's position. At that point in the trial defense counsel must have known that for all practical purposes the defense of mental illness had been destroyed by the testimony of the state's expert witness. This left appellant with only two possible defenses: (1) that she did not participate in or aid and abet the physical abuse of her child, or (2) that while she may technically have aided and abetted

Goode by not actively taking steps to prevent him from physically abusing the child, she was incapable because of Goode's influence over her of preventing Goode from harming the child. Because the evidence was clear that the child had been physically abused by someone, appellant could develop her first defense only by pointing the finger of guilt at Goode. There was no way that her defense counsel could effectively do this without prejudicing Goode. Likewise, there was no way defense counsel could establish appellant's second defense other than by showing that Goode was such an evil, vicious, depraved person that he had subjugated appellant to his will and thus rendered her powerless to protest his abuse of the child.

In one respect it can be said that appellant benefited from Goode's testimony and thus suffered no prejudice from the conflict, viz., because she was represented by the same attorney who represented Goode she had the benefit of Goode's testimony, whereas had Goode been represented by separate counsel undoubtedly he would have been explicitly advised by his separate counsel not to answer any questions concerning his participation in the disciplining of the child. This argument proves too much, however, because it demonstrates that it was in appellant's interest to point the finger of guilt at Goode, an avenue of attack that should have been unreservedly and vigorously pursued by an attorney who had absolutely no duty to protect Goode's interest.

I am compelled to conclude that appellant was prejudicied by the conflict of interest that was inherent in the very nature of the dual representation forced upon her attorney. Accordingly, the conviction should be reversed.