Donna AUSTIN, Petitioner-Appellant,

v.

Don R. ERICKSON, Warden of the South Dakota Penitentiary, Respondent-Appellee.

No. 72–1385.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1972.

Decided April 20, 1973.

Marvin K. Bailin, Sioux Falls, S. D., for appellant.

William J. Srstka, Jr., Asst. Atty. Gen., Pierre, S. D., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY, Circuit Judge and DURFEE, Senior Judge of the United States Court of Claims.*

* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

DURFEE, Senior Judge.

Donna Jean Austin, appellant, petitioned the United States District Court for the District of South Dakota for a writ of habeas corpus, pursuant to 28 U.S.C. §§ 2241 and 2254, against the Warden of the South Dakota State Penitentiary, Don R. Erickson, appellee. Austin had exhausted her remedies upon affirmance of denial of her application for a state writ of habeas corpus by the Supreme Court of South Dakota, Judge Wollman dissenting. Austin v. Erickson, S.D., 195 N.W.2d 395 (1972). Petitioner-appellant claimed her confinement was imposed upon a conviction and life sentence which were the result of a trial in which she was deprived of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the Constitution. The Federal District Court denied the petition in a memorandum opinion reported at 343 F. Supp. 22 (D.S.D.1972), and ordered the Writ of Habeas Corpus quashed on June 12, 1972. Donna Austin was remanded to the custody of appellee. This appeal from denial of the petition for writ of habeas corpus and order quashing the writ followed. We reverse.

The central issue is whether there was a conflict of interest arising from representation of Austin and a co-defendant by one attorney, which deprived her of effective assistance of counsel.[1]

Donna Austin and her companion, Ronnie Goode, were separately charged by the State of South Dakota with first degree manslaughter in killing William L. Doty, appellant's two and one-half year old son by a former marriage. One lawyer was appointed to represent both Austin and Goode as indigents. Their preliminary hearings were combined but they were separately tried.

Austin was tried first and convicted by a jury of first degree manslaughter for aiding and abetting Goode in killing her infant son. Appellant's conviction was affirmed on appeal. State v. Austin, 84 S.D. 405, 172 N.W.2d 284 (1969).

Goode was separately tried and also convicted by a jury of first degree manslaughter. On appeal his conviction was reversed by the South Dakota Supreme Court on the grounds that the appointment of the same counsel to represent both defendants created a conflict of interest which denied Goode his right to effective assistance of counsel. State v. Goode, 84 S.D. 369, 171 N.W.2d 733 (1969). The attorney for both defendants had called Goode as a witness at the Austin trial. Thereafter,

> * * * Although advised by the court of his constitutional right to refuse to testify to any matter which might tend to incriminate him, Goode testified fully and in detail about his relationship with Mrs. Austin and his care and handling of the deceased child. He related how he took care of the child while Mrs. Austin worked. He admitted using physical force as disciplinary measures. On the day of the child's death he admitted shaking the child shortly after which the boy was rushed to the hospital and died. His testimony could serve but one purpose—to deflect the glare of guilt away from Mrs. Austin. 171 N.W.2d at 735.

Goode's testimony was later read into the record in Goode's trial and fulfilled the State's burden of proof against Goode as to certain elements of the crime.

Appellant's principal contention is that there was a divergence of interests between Austin and Goode arising from the nature of the theory of the State against each defendant.

The State's theory was that Goode had directly committed the fatal act resulting in death of the child while the State's theory against Austin was that she aided and abetted Goode in failing to prevent Goode from administering

---

1. The integrity of counsel is not in question and nothing we say hereafter relates thereto. Trial counsel is not the same as the counsel who has prosecuted Austin's petition for writ of habeas corpus.

the fatal beating.[2] Petitioner-appellant argues that the separate theories gave rise to separate potential defenses. Whereas Goode could only defend on grounds of excusable homicide, Austin could rely upon a reciprocal defense of excusable homicide as well as a conflicting defense antagonistic to Goode, of lack of responsibility. To assert and prevail upon the second defense, petitioner-appellant would have had to introduce evidence in support of her defense which could tend to cast the blame on Goode alone. Appellant argues in part that counsel did make a marginal effort to pursue the defense of lack of responsibility on her behalf but that, beleaguered by his divided loyalty and the actual conflict of interests, the attorney could not develop the defense properly through vigorous and full examination of Goode and in argument.

The leading case in this area is Glasser v. United States, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680 (1942). In that case the Supreme Court enshrined the principle:

> * * * [T]he 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired. 315 U.S. at 70, 62 S.Ct. at 465.

No one seriously disputed the Sixth Amendment applies equally to the individual states through the due process clause of the Fourteenth Amendment. The principal announced in Glasser also binds the states.

In Glasser the co-defendants Glasser and Kretske shared the same attorney. The possibility of the inconsistent interests of Glasser and Kretske was brought home to the trial court, but the court created joint counsel anyway. Glasser, supra, at 71, 62 S.Ct. 457.

The Supreme Court noted:

> Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. Speaking of the obligation of the trial court to preserve the right to jury trial for an accused, Mr. Justice Sutherland said that such duty 'is not to be discharged as a matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departure from that mode of trial or from any of the essential elements thereof, *and with caution increasing in degree as the offense dealt with increase in gravity.*' Patton v. United States, 281 U.S. 276, 312–313, 50 S.Ct. 253, 263, 74 L.Ed. 854, 70 A.L.R. 263. The trial court should protect the right of an accused to have the assistance of counsel. [Emphasis added]. 315 U.S. at 71, 62 S.Ct. at 465.

2. The cause of death of the infant Doty was determined to be a subdural hematoma sustained by back and forth motion of the head during an act of shaking. 172 N.W.2d at 285. There was no evidence that Austin had shaken the child. "The State apparently does not claim that the conduct of the mother directly caused the death of her son. Its position seems to be that as to the child's death she was an aider and abettor." State v. Austin, 172 N.W.2d at 288. The jury at Austin's trial was instructed as follows:

"In the case of a parent, the parent has a duty to protect her child. Because of this, if a parent knows that another person is abusing her child or is inclined to do so and such parent stands passively by and does nothing to protect her child or to prevent another from abusing her child, it being reasonably within her power to do so, such parent is considered as having aided and abetted such other person and thereby becomes a party to such abuse of her child and equally guilty. If, under such circumstances, the child dies as a result of such abuse by another person, the parent is held to be equally responsible for the death of the child." 172 N.W.2d at 287–288.

The Supreme Court later added:

> Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of the divergence is brought home to the court. 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680.

In *Glasser, supra,* 72–75, 62 S.Ct. 457, *the possibility of divergent interests manifested itself in actual conflict of interest* during the course of the trial in that it inhibited counsel's conduct of Glasser's defense. The Court in *Glasser* concluded:

> Our examination of the record leads to the conclusion that Stewart's (counsel's) representation of Glasser was not as effective as it might have been if the appointment had not been made. 315 U.S. at 76, 62 S.Ct. at 468.

■■ Where the conflict of interest appears from the outset, it is clear error for the Court to force the same counsel on both accused. *See* Larry Buffalo Chief v. State of South Dakota, 425 F.2d 271 (8th Cir. 1970). And it is the rule in this circuit that no reversible error is committed by a District Court in assigning a single attorney to represent two or more co-defendants in a pending criminal action, absent evidence of an actual conflict of interest or evidence pointing to a *substantial possibility* of a conflict of interest between the co-defendants. United States v. Williams, 429 F.2d 158, 161 (8th Cir. 1970), cert. denied, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253.

In the instant case appellant Austin has not argued that at the time of appointment of joint counsel the trial judge failed to conduct a "careful inquiry and satisfy himself that no conflict of interest is likely to result and that the parties have no valid objection." *Williams, supra,* at 161. Rather appellant argues that the trial judges "should have been aware" of the conflict when he made the appointment of counsel, essentially because appellant had available to her a potential, though unarticulated, defense intrinsically antagonistic to Goode's interests.[3] We do not think that appellant made a sufficient showing to establish an actual conflict arising from the outset or a "substantial possibility" of a conflict of interest at the outset which was brought home to the court. Whether the trial court should have *foreseen* the conflict and appointed separate counsel is not then the pivotal issue in this case. In this respect this case is similar to Sawyer v. Brough, 358 F.2d 70, 74 (4th Cir. 1966). What is determinative is that the possible divergence of interests of Austin and Goode developed into a clear and actual conflict of interest in counsel's representation of Goode and Austin during the course of Austin's trial limiting and inhibiting the attorney's conduct of Austin's defense.

The conflict of interest was most evident when Goode took the stand at Austin's trial on her behalf. Before Goode testified, the court advised him of his privilege against self-incrimination and specifically stated that it would permit counsel to prompt Goode to claim that privilege. Upon this direct examination, Goode admitted hitting the Doty child, and counsel moved to strike the statement, "as it might tend to incriminate this defendant in a later charge against him." The court denied the motion and counsel stated: "That's all right. I'm making the motion. Of course, I am trying to defend this defendant, as well.

---

3. Appellant further noted in her brief that in the state court habeas corpus evidentiary hearing at which only she testified, she testified that she was "not informed by the trial court that she was entitled to separate counsel." This alone does not establish reversible error.

It should further be noted that neither appellant nor the State called appellant's trial attorney as witness at the State or Federal habeas corpus evidentiary hearings.

All right. Now, you understand, Ron, you don't need to say anything, but you can, if you wish, say everything. But you understand that you are supposed to say what Donna did. This charge is against Donna. * * * Go ahead and tell us the whole thing; or tell us what you want to." 171 N.W.2d at 735.

The South Dakota Supreme Court found this same dialogue crucial in establishing a violation of Goode's Sixth Amendment right to effective counsel. The foregoing exchange also reveals a "struggle to serve two masters," *Glasser, supra*, 315 U.S. at 75, 62 S.Ct. 457, which hampered his defense of Austin.

*Taken altogether*, counsel's gingerly direct examination of Goode was indicative of his "duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—(were) hobbled or fettered or restrained by commitments to others." White v. United States, 396 F.2d 822, 824 (5th Cir. 1969), citing Porter v. United States, 298 F.2d 461, 463 (5th Cir. 1962). Appointed counsel's cautious examination indicated that he could not use his best efforts to force Goode to exonerate Austin for fear of Goode's implicating himself. The Supreme Court of South Dakota found that Goode's testimony "could serve but one purpose—to deflect the glare of guilt away from Mrs. Austin." 171 N.W.2d at 735. At this point it was without a doubt in appellant's interest to show that she could not prevent Goode from beating the child and that Goode was determined to discipline the child even to the point of injuring him severely. But rather than exploit this clear opportunity to develop fully the defense of lack of responsibility on behalf of Mrs. Austin, counsel failed to do so. Counsel's failure to undertake such a direct examination "luminates the cross-purposes under which he was laboring." *Glasser, supra*, 315 U.S. at 73, 62 S.Ct. at 466. In an analogous case, United States v. Pinc, 452 F.2d 507 (5th Cir. 1971), the unwillingness of a commonly shared attorney to examine fully and directly a co-defendant whose statements were reasonably assumed to be exculpatory to the benefit of a defendant was held to deny defendant effective assistance of counsel.

■■ We do not speculate whether or not the defense of lack of responsibility could have been successfully developed and asserted on behalf of Mrs. Austin. Whether successful or unsuccessful, the defense was not developed because of counsel's divided loyalties, and the possible damage to Goode. *See* Craig v. United States, 217 F.2d 355, 358 (6th Cir. 1954). The right to the "untrammeled and unimpaired" assistance of counsel is breached where a defendant's counsel simultaneously represents another defendant with conflicting interests. Government of Virgin Islands v. John, 447 F.2d 69, 74 (3rd Cir. 1971). Each defendant does not have to delineate the precise manner in which he or she may have been harmed by the conflict of interest. *Sawyer, supra*, 358 F. 2d at 73. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser, supra*, 315 U.S. at 76, 62 S.Ct. at 467. No prejudice need be shown. Accord: United States v. Gougis, 374 F.2d 758, 761 (7th Cir. 1967); Kaplan v. United States, 375 F.2d 895, 898 (9th Cir. 1967), cert. denied, 389 U.S. 839, 88 S.Ct. 67, 19 L.Ed.2d 103.

The capstone we think is that, despite the fact that evidence was on the record that Goode alone was responsible for the child's death, the attorney elected in closing argument to rely solely upon excusable homicide in defense of Austin. Goode directly caused the death; his only defense was excusable homicide. Upon this record, to make Austin's defense dependent upon, and parasitic to, Goode's defense is further evidence of the actual conflict of interest. The language the South Dakota Supreme Court chose in State v. Goode, 84 S.D. 369, 171 N.W.2d 733, 736, where it discussed the

conflict of interest affecting Goode, is equally applicable to Austin:

No attorney should be placed in a position of divided loyalty 'where he may be required to choose between conflicting duties or to be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the party whom he should alone represent.' Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A.2d 641.

In considering Austin's application for a writ of habeas corpus, the South Dakota Supreme Court ruled that Austin had not shown a conflict of interest or prejudice to her by the dual representation of herself and Goode by the same attorney. It said:

It appears that this Court has decided by its opinion in State v. Austin, *supra*, and State v. Goode, *supra*, that in having the defendant Goode testify in her case at a time when both were represented by the same counsel, she was benefited or at least the attempt was made to assist her, by having Goode take the blame. Under these circumstances we cannot find that she has been prejudiced and as to her at least, there was no conflict of interest.[4] 195 N.W.2d at 398.

In turn when considering Austin's petition, the Federal District Court relied on that *part* of the reasoning in *Glasser* which held that if one defendant is to rely on the denial of his co-defendant's constitutional rights for reversal, he must show that denial prejudiced him in some manner. Applying *this* rule, the District Court said: "Some prejudice must be shown even though the amount of that prejudice need not be shown. No prejudice has been shown by the petitioner." 343 F.Supp. 22, 24. The District Court additionally founded its denial of the application for the writ upon a finding of no conflict of interests.

The reliance of the District Court on the aforementioned part of the holding in *Glasser* was misplaced. Austin does not rely upon the denial of Goode's constitutional right to effective counsel for reversal but rather upon denial of her own right to effective assistance of counsel. Once the actual conflict had been established which affected her own right to counsel's effective assistance, Austin had met her burden.

The Federal District Court further stated:

Her chief complaint now is that she and her trial counsel chose the wrong defense. Yet she offered no evidence at the hearing before this court, as was done in Buffalo Chief v. South Dakota, 425 F.2d 271 (8th Cir. 1970), as to why her attorney chose excusable homicide as her defense instead of attempting to lay the blame solely on Goode. As the evidence now stands we can only speculate that that defense was chosen because petitioner thought that was the truth. 343 F.Supp. at 24.

The issue in this case is not why a particular defense was chosen and we do not agree that petition-appellant's chief complaint is that the wrong defense was chosen. This is not simply a case where appellant now criticizes "the defense 'adopted' from hindsight." Duran v. United States, 413 F.2d 596, 599 (9th Cir. 1969). We think there was

---

4. We think Judge Wollman in his dissent saw the issue:

In one respect it can be said that appellant benefited from Goode's testimony and thus suffered no prejudice from the conflict, viz., because she was represented by the same attorney who represented Goode she had the benefit of Goode's testimony, whereas had Goode been represented by separate counsel undoubtedly he would have been explicitly advised by his separate counsel not to answer any questions concerning his participation in the disciplining of the child. This argument proves too much, however, because it demonstrated that it was in appellant's interest to point the finger of guilt at Goode, an avenue of attack that should have been unreservedly and vigorously pursued by an attorney who had absolutely no duty to protect Goode's interest. 195 N.W.2d at 399.

clear and convincing evidence of an actual conflict, distinguishing this case from *Larry Buffalo Chief*. The Federal District Court's finding to the contrary was clearly erroneous.

■ That the attorney relied solely upon excusable homicide in his closing argument on behalf of Austin, giving the appearance of Austin's conscious selection and reliance upon this defense, is *by itself* misleading. It must be remembered that in cases involving conflicts of interest, the conflict does not always appear full-blown upon the record since counsel may throughout endeavor to reconcile the conflict. The burden is upon the State to show that Austin made a knowing and intelligent waiver of her right to effective assistance of counsel by selecting, agreeing to, or acquiescing in a singular defense of excusable homicide —or by knowingly, intelligently, and intentionally choosing to be represented by the same attorney. *Glasser, supra,* 315 U.S. at 71, 62 S.Ct. 457; *Larry Buffalo Chief, supra,* 425 F.2d at 280; Government of the Virgin Islands, 447 F.2d at 74; Campbell v. United States, 122 U.S. App.D.C. 143, 352 F.2d 359, 360 (1965). The State did not shoulder that burden in this case. Every reasonable presumption against the waiver of fundamental rights is made in order to protect Sixth Amendment rights. *Glasser, supra,* 315 U.S. at 70, 63 S.Ct. 457.

The evidence left the District Court in the position of speculating as to defendant's waiver of her fundamental right to effective assistance of counsel. It is clear that the court should have assumed, and concluded, that the right was not waived.

■ The right to counsel does not mean the right to successful counsel. Mere errors of judgment on the part of counsel are not sufficient to establish ineffective assistance; nor is it the function of a reviewing court to evaluate the relative efficacy of trial tactics by counsel. We do not deviate from these concepts by our holding. Our examination of the record, however, leads us to the conclusion that counsel's representation of Austin was not as effective as it might have been if the appointment had not been made.

We reverse and remand to the District Court with instructions to grant the writ of habeas corpus subject to the right of the State of South Dakota to retry Austin within a reasonable time.

Reversed and remanded.