STATE ex rel WAGNER, Plaintiff, v. CIRCUIT COURT OF MINNEHAHA COUNTY, et al, Defendants.

(244 N. W. 100.)

(File No. 7463. Opinion filed August 15, 1932.)

*M. Q. Sharpe,* Attorney General, *E. E. Wagner,* Assistant Attorney General, and *G. Norton Jameson,* State's Attorney, of Sioux Falls, for Plaintiff.

*A. B. Fairbank,* of Sioux Falls, *H. O. Hepperle,* of Aberdeen, and *Pat Morrison,* of Mobridge, for Defendants.

RUDOLPH, J. The grand jury of Minnehaha county indicted J. Q. Hossack and C. T. Charnock on May 27, 1932, for the crime of obtaining money under false pretenses. The indictment is in three counts, and charges the offenses to have been committed in Minnehaha county by the filing of false claims on behalf of the Western Bridge & Construction Company for the construction of bridges and culverts during the years 1926 to 1930, each inclusive. During these years C. T. Charnock was county highway superintendent of Minnehaha county; J. Q. Hossack was a stockholder of the Western Bridge & Construction Company and actively conducting its business in Minnehaha county. It is charged that Hossack, with the aid of Charnock, pretending to act for the county, presented claims, sworn to by Hossack and approved by Charnock, purporting to be final and verified accounts and claims for material and labor, falsely represented to be true and correct, but in fact for amounts largely in excess of the amounts of material and labor actually presented and performed and known by the defendants to be false, and that the county board allowed and paid the claims in reliance upon such false representations.

Charnock, as county highway superintendent, employed one James W. Griffith, an engineer, under the provisions of section 19, chapter 333, Laws of 1919. Griffith appeared before the circuit court and testified in a proceeding, wherein the circuit court entered an order, which order is the basis of this proceeding in this court. From that testimony it appears that Griffith was employed by the county highway superintendent by the day and paid by the county. A part of his duties consisted of supervising construction and inspecting the bridges and culverts involved in the indictment. In the performance of these duties Griffith made field notes consisting of "notes on location, notes on excavation and stuff of that sort," and more or less notes of total quantities entering into the various structures. In addition to making these field notes, which were made by Griffith while he was inspecting and supervising the work, Griffith also made a drawing of each project, which drawing was made about the time each job was completed and before the foreman of the job sent in his work report. These drawings were made

from the notes taken in the field and from the plans used on the job, and were made at the request of the construction company. The drawings showed quantities of materials used, and the amount of excavation. As the work progressed on the various projects, estimates of the amount and character of the work done were prepared by Griffith. These estimates were based, in part at least, upon the field notes and the drawings, above referred to. These estimates were furnished by Griffith to Charnock, and, based upon these estimates, Charnock allowed claims filed by the construction company in partial payment of work being done. Prior to the time the indictment was returned against Charnock and Hossack, the state auditor conducted an investigation of the affairs of Charnock's office in Minnehaha county. These field notes and sketches were found by the state auditor in his investigation of Charnock's office, were retained by the state auditor, and are now in the possession of the state's attorney of Minnehaha county. The state's attorney refused to allow the defendants to inspect these documents, and a motion to compel an inspection was made before the circuit court, wherein the testimony of Griffith, above referred to, was taken. An order was made by the circuit court ordering the inspection of the field notes and drawings "at reasonable times during regular office hours in the presence of the state's attorney of Minnehaha County, South Dakota, or someone appointed by him for that purpose." The field notes consisted of four separate small books, and each book was identified as an exhibit. The drawings were also identified as exhibits.

The matter is now before this court as an original proceeding in certiorari directed against the Honorable L. L. Fleeger, the circuit court judge who made the order allowing the inspection.

We recognize that there are certain constitutional privileges granted a defendant in a criminal case which place upon the prosecution a heavy burden in the preparation and presentation of its case. We desire to in no way add to that burden; on the other hand, reason and fairness require that a defendant should be given every reasonable opportunity to prepare for his defense.

The learned assistant attorney general contends, first, that the court is without power to compel an inspection. The contention is made that no such power existed at common law, and

that our statute, section 2712, R. C. 1919, cannot be made applicable to criminal cases by means of section 4880, R. C. 1919, for the reason that under said section 2712 the court may "order either party to give to the other" an inspection, etc. It is argued that, if made applicable to criminal cases, the court could require the defendant to furnish evidence against himself, which the Constitution forbids. New York has statutes similar to our sections 2712 and 4880. In the case of People ex rel Lemon v. Supreme Court, 245 N. Y. 24, 156 N. E. 84, 87, 52 A. L. R. 200, the then Chief Justice, Cardozo, of the New York Court of Appeals, determined that the case then before the court did not require a determination of the existence of the power of a court in a criminal case to compel an inspection, but left the question open, holding that, if the power did exist, the facts in that case were not within it. The later case of People v. Kresel, 142 Misc. 88, 254 N. Y. S, 193, 196, while an opinion of the Supreme Court, New York county, definitely recognizes the power, and supports its decision upon the reasoning used in the Lemon Case, supra, and the later case of People v. Miller, 257 N. Y. 54, 177 N. E. 306. As pointed out in the case of People v. Kresel, supra, "In other jurisdictions, evidential matter which is in the hands of the people and which would be of value, either in proving or disproving the guilt of the defendant, has been made available for the use of the defendant (Bishop's New Criminal Procedure [2d Ed.] vol 2, pp. 771, 772, and cases therein cited).

This observation of the New York court is further confirmed by the annotation in 52 A. L. R. commencing on page 207. In many of the cases where the relief is denied, the existence of the power is recognized. We are of the opinion that the power exists. It exists either by virtue of statute, or by virtue of an inherent power within the court to compel an inspection in furtherance of justice, or by virtue of a "process or analogy" to the civil statute, thereby making the procedure in civil and criminal actions uniform to the extent permitted by the Constitution. Conceding that our statutes strictly construed are not sufficient to authorize the power in a criminal proceeding, nevertheless, we believe that the development of the procedure, since the enactment of the first of the civil statutes upon which our civil statute is based sustains our conclusion that the power exists either by virtue of now being inherent

in the court or by virtue of a process of analogy to the civil procedure, which has made the practice of allowing an inspection of documents a part of the substance of the procedural system of the state.

We come now to the extent of the power. It is said in the case of People ex rel Lemon v. Supreme Court, supra: "The power in criminal prosecutions may not improbably be less. [Than that given by the statute in civil cases.] It surely can be no greater."

██ ██ The civil statute provides that an inspection may be ordered in the discretion of the court, of any "books, papers * * * containing evidence relating to the merits of the action or the defense therein." It is quite generally held, therefore, that, before the court can compel an inspection, the documents themselves must be evidential in character. Thus it was held in the Lemon Case, supra, that "merely mnemonic instruments whereby the prosecutor may be better able to elicit evidence hereafter," were not within the power to compel an inspection. It is the contention of the state in this case that the field notes and drawings, here sought to be inspected, are mere mnemonic instruments useful only for the purpose of refreshing Griffith's recollection as to the material furnished in the several jobs. Assuming that the rule is such that only evidential matter may be ordered inspected, we nevertheless are of the opinion that the order of the circuit court should not be disturbed. The question is before this court upon a writ of certiorari. The jurisdiction of the court to enter the order is thereby attacked. Section 2996, R. C. 1919; State ex rel Dollard v. Board of Com'rs of Hughes County, 1 S. D. 292, 46 N. W. 1127, 10 L. R. A. 588; Austin et al v. Eddy et al, 41 S. D. 640, 172 N. W. 517. Unless it appears that these exhibits ordered inspected were not evidential in their character, this court cannot say that the circuit court exceeded its jurisdiction in making its order. These field notes and drawings are something more than mere memoranda or notes collected by the prosecution in the preparation of the case. These documents were made by the engineer and inspector in charge of the particular project; they are the original figures and data upon which estimates, in part at least, were made and furnished. Upon these estimates the defendant Charnock relied in allowing partial payments to be made to the construction company. It might be that, so far as the state is concerned, the exhibits are useful only

for the purpose of furnishing an aid to Griffith in testifying; but from the record, as it discloses the character of these instruments, this court is not willing to say that these exhibits cannot become material and be received in evidence. In this connection it might be well to point out that the exhibits themselves are not before this court, while they were before the circuit court. The record further discloses that Griffith was the only engineer checking the work as it progressed (with the exception of one bridge); that he was doing this work for and on behalf of the county superintendent of highways, who is now charged with obtaining money under false pretenses on account of payments made by the county for the bridges that Griffith was checking. To now say that the original figures made by Griffith in connection with his work on these different bridges could not become material as evidence we do not believe would be justified or reasonable. The defendant is entitled to a reasonable opportunity to prepare for trial; intricacies in figures, no doubt, will be involved. We are of the opinion that an inspection at this time might avoid considerable delay during the trial.

The writ issued herein should be dismissed. Let judgment be entered accordingly.

CAMPBELL, P. J., and WARREN, J., concur.

POLLEY and ROBERTS, JJ., absent and not participating.