STATE, Respondent v. BUFFALO CHIEF, Appellant

(155 N.W.2d 914)

(File No. 10376. Opinion filed January 24, 1968)
Rehearing denied April 23, 1967

**David F. Sieler** and **R. James Brennan,** Pennington County States Atty., Rapid City, and **Walter W. Andre,** Asst. Atty. Gen., Pierre, for respondent, **Frank L. Farrar,** Pierre, on the brief.

**Clinton G. Richards,** of **Hayes & Richards,** Deadwood, for defendant and appellant.

BIEGELMEIER, Judge.

On the evening of October 9, 1965, C. F. Thorn was one of the passengers in an automobile driven by Charles Johnson, on their way to downtown Rapid City. Finding no available parking space, Johnson drove into an alley when he discovered he could not pass because another car was stopped in the middle of the alley with persons standing outside the car talking to those inside. They were referred to in the testimony as Indians. After sounding his horn and calling out for the car ahead to be moved and getting no results, Johnson walked up to it and shortly was struck by one of the persons there and knocked

down. Thorn got out of the Johnson car and also walked up to the area ahead. He was hit, beaten and kicked by three of the men, two of whom were Buffalo Chief and Leon Gayton, as a result of which he died within minutes. Other facts will be detailed as necessary in considering the questions presented. A jury found defendant guilty of manslaughter in the first degree and he appeals from the judgment imposing sentence, and is now represented by other than his trial counsel.

The Buffalo Chief twelve assignments of error are grouped to present five questions, two of which his counsel at oral argument indicated were the principal points. They will therefore first be considered. Defendant claims no error in the court's instructions or that they are improper, but asserts error for the court to submit the charge of murder to the jury, contending the evidence was insufficient to support that charge. There was evidence that while Johnson was fighting with one of the occupants of the car, Gayton struck Thorn from the back and another man struck him on the side of the head and knocked him down on the ground; as injured Thorn started crawling back to his car on his hands and knees, three of them were kicking and hitting him. Buffalo Chief kicked him in the face with such force he went over backwards. Mrs. Johnson identified Buffalo Chief as one of the persons who was beating Thorn and kicking him in the face and head from the left side as he was on the ground and Gayton on the right side; she asked them to quit, took hold of Buffalo Chief's jacket to try to stop him, but he jerked away. She told them, " 'You're killing him, quit, he is dying, don't kick him anymore,' but they wouldn't stop". After Thorn was lying on his back the two defendants and another man continued to kick him. Miss Fast Horse, who was in the front car with defendants, testified she saw both of them kick Thorn quite a few times; that defendant Gayton "came running back to the car, he jumped in the back seat and we left"; that later he advised her he had told the police he had passed out in the back seat of the car and he told her to say the same. Another witness testified he looked up the alley, saw a man in a khaki outfit get out of the car and walk up to the other car; at least three men got out of that car, started swinging, knocked

him down; the man went down to his knees, he went over backwards, and "they kicked him quite a number of times and then they jumped back in the car and drove away." The medical testimony was to the effect Thorn's death was the direct result of intercranial hemorrhage due to multiple blows to the head; these could be caused by blows from a fist or kicking of a foot, shoe or boot.

Defendant also makes the point of lack of evidence of a premeditated design to effect Thorn's death. SDC 13.2007 provides:

"Homicide is murder in the following cases:

(1) When perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any oher human being".

SDC 13.2008 provides:

"A design to effect death, sufficient to constitute murder, may be formed instantly before committing the act by which it is carried into execution. Such design is inferred from the fact of killing unless the circumstances raise a reasonable doubt whether such design existed."

██ ██ In State v. Godlasky, 47 S.D. 36, 195 N.W. 832, the court approved an instruction to the jury embodying the last sentence of SDC 13.2008, and we believe the first sentence there also mentioned is a proper guide in the trial of homicide prosecutions. Both appear to be rules of law reached by some courts, for in State v. Ogilvie, 180 Or. 365, 175 P.2d 454, which supports the design by inference doctrine, the court wrote: "Direct proof of deliberation and premeditation is not necessary but they may be inferred from the circumstances of the killing". Sandoval v. People, 117 Colo. 588, 192 P.2d 423; Wharton on Homicide, 2nd Ed. § 180; State v. Gowdy, 262 Minn. 70, 113 N.W.2d 578. Other authorities are to the same effect. The design (to effect death) may have existed for only an instant before the commission of the crime. 26 Am.Jur., Homicide, § 42; State v. Gowdy, supra, and State v. Powell, 237 Iowa 1227, 24

N.W.2d 769, recognizing the rule. The evidence which we have only sketched, including the unprovoked assault on and the continued brutal kicking of the helpless decedent when he was crawling on his hands and knees to escape his attackers, even after the fruitless effort of Mrs. Johnson to stay them, was sufficient to submit the charge of murder to the jury.

■■ Defendant's argument on the insufficiency of evidence claim is largely that the evidence of Mrs. Johnson, a sister of deceased, was obviously prejudiced, inconsistent and unworthy of belief, and that it was uncorroborated except by Irma Fast Horse whose testimony he also attacks. The credibility of witnesses and the weight to be given their testimony are matters for the jury. The court has many times so held. State v. Peck, 1967, 82 S.D. 561, 150 N.W.2d 725, and cases cited. Corroboration is not necessary to sustain the offense charged.

■ ■ Error is assigned in consolidating the action against Buffalo Chief for trial with that of defendant Gayton and, in argument thereunder, it is asserted defendant Buffalo Chief was deprived of his right to effective assistance of counsel guaranteed by Amendment VI of the United States Constitution, the claim being made defendants had conflicting interests yet were represented by the same counsel. Defendant's brief admits Thorn met his death in the encounter with the four Indian men in the forward car and the blow from which Thorn died "must have been inflicted by some one of these four." As related above, the state's evidence was three persons, Buffalo Chief, Gayton and one Dennis Little, were assaulting the deceased while the fourth, Bobby Wright, was involved in a separate fight with Johnson, driver of the Thorn car. Little was the driver of the other car and Wright seated on the opposite side. Wright came around the car struck Johnson in the stomach; they fought and ended up on the ground and he never let go of Wright during that time until he heard Mrs. Johnson scream Thorn had been killed. This evidence eliminated Wright from the assault on Thorn. Both defendants testified at the trial in their defense. Gayton said Buffalo Chief was just standing "over there" but didn't take

part in the fight. Buffalo Chief testified Gayton was asleep in the car during this time. He agreed Johnson and Wright were fighting on the ground, though he also included Little in that fracas. He said Gayton pulled Little away from the fight and it was Wright who kicked Thorn. In sum their testimony was they took no part in the assault on Thorn, but blamed it on Wright and Little. Buffalo Chief asserts: "Two such identical defenses to the jury is bound to give the idea that one of them at least is fabricated." Assuming defendants both testified in separate trials as they did here, we do not perceive how this or the other assertions made in defendant's brief could have been avoided. Except for a claim of some difference in the testimony of witness Osborne of the color of the shirts worn by the participants, the evidence mentioned was that of the other defendant. Their stories did not implicate—they supported each other and if they gave appearance of being fabricated they cannot complain. The decision to testify in either separate actions or a joint action was their own and their version was susceptible to the same comment in either event. The fact one attorney represents two defendants charged with participation in the same crime is not ipso facto evidence of inadequate representation, Curry v. State, 36 Wis.2d 225, 152 N.W.2d 906, and the record does not indicate any such result.

The claim asserted is deprivation of the right provided for by Art. VI of the amendment to the United States Constitution, which guarantees to the accused in all criminal cases the right "to have the assistance of counsel for his defence." It is made obligatory on the states by the due process clause of the Fourteenth Amendment, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733, and this court is bound by decisions of the United States Supreme Court in construing those provisions.[1] Defendant Buffalo Chief, Little and Gayton were charged with the crimes in separate actions, and

1. Our state has been in the vanguard in declaring and preserving those fundamental rights, as Art. 6, § 7 of our Constitution grants the accused in a criminal prosecution the right "to defend in person and by counsel". See State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N.W.2d 712. This court has reversed a conviction obtained after refusal of the right of defendant to defend in person. State v. Thomlinson, 1960, 78 S.D. 235, 100 N.W.2d 121. The legislature has likewise been solicitous of such rights by making provision for payment of counsel for indigent persons for both trial and on appeal and transcripts of evidence for many years. SDC 34.1901, formerly § 4791, Rev.Code, 1919, and §§ 553-554, Rev.Code, Crim.Proc., 1903.

at their request an attorney appointed for Buffalo Chief and another for Dennis Little. Before the preliminary hearing they employed counsel of their own choice, the same one Gayton had theretofore employed, and the two appointed counsel were discharged and released from their appointments. Defendants had this right and the court had no responsibility to exercise any control over the selection of counsel by these defendants. We have so concluded this term in State ex rel. Pekarek v. Erickson, 83 S.D. 79, 155 N.W.2d 313. It would unduly extend this opinion to set out that counsel's extensive services, except to note he demanded and obtained continuances and a preliminary hearing, made application for bail, entered pleas of not guilty and not guilty by reason of insanity, procured an order for appointment and examination of defendant by a qualified psychiatrist at public expense and required the States Attorney to furnish a copy of the transcript of a John Doe hearing held some time prior thereto. He also made application for change of place of trial from Pennington County which the court granted and changed to Lawrence County. Prior thereto application was made by defendant's attorney to consolidate the Buffalo Chief and Gayton cases for trial. Little had then changed counsel. At this hearing, as at others, the proceedings were protracted and extensive and the court expressly and in detail informed defendants of the motion and questioned them as to their desire and they separately stated they wanted their cases to be tried as one case. The court granted the motion that defendant's present counsel now vigorously claim was error. In Pekarek the court has said it is not the responsibility of the trial court to exercise any control over the selection of counsel for the accused. Nor can the court determine what tactics[2] that counsel shall observe within the rules of procedure and evidence, and maintenance of decorum. Under the circumstances, refusal to permit defendants to employ an attorney of their own choice or recognize him as their attorney was without the power of the court and would have been denial of a right to defend "by counsel" under the South Dakota Constitution, and of "assis-

---

2. "In the conduct of his client's cause, the right of counsel, within the law, to determine questions of trial tactics, or policy or strategy is one the courts must not infringe." Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383.

tance of counsel" under the United States Constitution heretofore cited.[3] No claim is made trial counsel was inept, inexperienced or unqualified. The brief resume of his many defense moves indicates diligence and it is within this court's knowledge from its records that he has appeared and tried numerous criminal actions throughout the state. That counsel and defendants may well have reasonably concluded there was safety in numbers and deliberately chose the course is indicated. To permit challenging it after trial cannot be approved for in the individualistic practice of law there may be as many different theories and trial tactics as there are lawyers.[4]

Defendant points to Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, as final authority. That it is final for what is there decided may be conceded yet the facts there were so different that it does not apply here. There the trial judge appointed the same counsel for defendant Glasser who had been appointed attorney for a co-defendant. Glasser objected[5] and asked that different counsel be appointed for him and at the same time, one of the specific items of the inconsistency of defense of the two defendants, i. e., inadmissibility of conversations where Glasser was not present, was called to the attention of the court by appointed counsel. At the trial, evidence binding on the one defendant was not objected to by his counsel. The Supreme Court limited its opinion by stating the assistance of counsel guarantee should be unimpaired "by a court order requiring that one lawyer shall simultaneously represent conflicting interests". Glasser's counsel was not employed by him but forced on him by court order over his objection and as the Wisconsin court describes his attorney's predicament, Glasser was a "client that the court had forced on him."

---

3. A defendant with means has the right to be represented by a lawyer of his own choice. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4; State v. Myers, 352 Mo. 735, 179 S.W.2d 72; State ex rel. Snip v. Thatch, 355 Mo. 75, 195 S.W.2d 106; see also Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and People v. Avilez, 86 Cal.App.2d 289, 194 P.2d 829.

4. When a defendant appears by counsel of his own choice the court has no power to assign another attorney to him. In re Sippy, D.C.Mun.App., 97 A.2d 455, and People v. Price, 262 N.Y. 410, 187 N.E. 298. The difficulty that arises when one attorney claiming to represent a party differed with the attorney chosen by that party appears in the Sippy opinion.

5. Glasser statement to the court: "I would like to have my own lawyer representing me".

Curry v. State, 36 Wis.2d 225, 152 N.W.2d 906. We conclude there was no error for the court to grant the motion deliberately made by defendant's employed counsel, to which he gave his assent and he was not denied effective assistance of counsel. Many of the cases cited and others read, indicate counsel was either appointed by the court or employed for one defendant by another defendant or for other reasons owed no loyalty or obligation to the complaining defendant and the representation amounted to a sham or fraud. See United States v. Harris, D.C.S.D.Cal., 155 F.Supp. 17; Craig v. United States, 6 Cir., 1954, 217 F.2d 355; Porter v. United States, 5 Cir., 1962, 298 F.2d 461.

■ Assignment of error 3 asserts the court erred in denying defendant's request the state produce the results of a blood alcohol test given decedent Thorn at the time of the autopsy. The record shows the request was made at the trial during the cross-examination of a doctor who conducted the autopsy. He testified he took a specimen of the blood and submitted it to the State Chemical Laboratory for analysis; that he did not have nor did he ever have the results of the test. Thereupon defendant's attorney called on the state to produce the "test and results thereof." The States Attorney stated he did not have the results of the test and this was not controverted. Defendant cites a part of a sentence from 40 C.J.S. Homicide § 224. There was no evidence Thorn was intoxicated or claim made of self-defense. It was not error to deny the request.

■ It is argued photographs of deceased showing the condition of his head after the assault were improperly admitted in evidence. No objection was made to them so no question of error is presented. The court has approved admission of similar evidence in State v. Zobel, 81 S.D. 260, 134 N.W.2d 101. Neither did the court err in denying the motion for mistrial based on the claim of prejudicial remarks of the prosecuting attorneys in their argument to the jury.

Affirmed.

All the Judges concur.