480 P.2d 401

**STATE of New Mexico, Plaintiff-Appellee,**

**v.**

**Fred Arthur SEDILLO, Defendant-Appellant.**

**No. 518.**

Court of Appeals of New Mexico.

Jan. 15, 1971.

Leon Taylor, Albuquerque, for defendant-appellant.

James A. Maloney, Atty. Gen., Santa Fe, Ray Shollenbarger, Asst. Atty. Gen., for plaintiff-appellee.

OPINION

HENDLEY, Judge.

A jury found the defendant guilty of larceny and burglary and he was sentenced pursuant to the Habitual Criminal Statute, § 40A–29–5, N.M.S.A.1953 (Repl.1964). Defendant questions (1) the sufficiency of the evidence to support the conviction; (2) the admission into evidence of copies of log sheets prepared by the radio dispatcher for the police department; and (3) the constitutionality of the Habitual Criminal Statute.

We affirm.

SUBSTANTIAL EVIDENCE TO SUPPORT THE JURY VERDICT.

■ On appeal from a conviction we view the evidence and all reasonable infer-

ences therefrom in a light most favorable to support the verdict. State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App. 1970), cert. denied, 81 N.M. 669, 472 P.2d 383 (1970).

■ Early on the morning of October 26, 1969, Officer Moody, of the Albuquerque Police Department, was patrolling the North Twelfth Street area in Albuquerque, New Mexico. He saw the defendant with two companions (one of the companions was a co-defendant Epifanio Sedillo) standing next to a 1963 Chevrolet station wagon parked by the Acme Fast Freight Company's warehouse. Officer Moody observed that the station wagon was full of cardboard boxes and suspected that a burglary was in progress. By this time, Officer Moody had driven past the scene of the crime and was unable to immediately apprehend the defendant and his two companions. He radioed Officer Brennan who was approaching the scene of the crime. Officer Brennan pursued the station wagon which had left the scene at a high rate of speed. The station wagon successfully lost Officer Brennan but after a five minute search he found Epifanio Sedillo near where the station wagon had been parked and arrested him. A few minutes later, the defendant, Fred Sedillo was found in a carport a few yards from where the station wagon was parked and he was arrested. A house adjoined the carport on each side and a person could not pass through the back of the carport because of a ten and one-half foot high fence. Defendant Sedillo was trapped in the carport since his only means of exit was through the front where the police were investigating the parked station wagon. Further investigation revealed that Acme had been burglarized and that the goods taken from Acme were the same as the goods found in the station wagon.

The only reasonable inferences from this evidence were that defendant was seen with the stolen goods at the scene of the burglary, that when he was so observed, he tried to escape apprehension, that he was arrest-

ed within a very few minutes after the escape attempt as a result of "hot pursuit" by the police, and arrested near the vehicle containing the stolen goods. We agree with defendant that "presence alone is insufficient to sustain a conviction" for burglary. However, the facts and reasonable inferences therefrom show much more than mere presence. There was substantial evidence to support the conviction. Compare State v. Sharp, 78 N.M. 220, 430 P.2d 378 (1967) and State v. Beachum (Ct. App.) 82 N.M. 204, 477 P.2d 1019 decided November 6, 1970.

## ADMISSIBILITY OF THE POLICE DEPARTMENT RADIO DISPATCHER'S LOG SHEET.

A policeman went to the records division on the second day of trial and requested a copy of the dispatcher's log sheet showing calls received and transmitted by and from the officers investigating the burglary and larceny for which the defendant was convicted. The purpose of this evidence was to impeach the testimony of defendant's alibi witnesses concerning the time of day involved. The policeman was handed the log book and he made a copy of the appropriate page. The policeman testified at trial that the copy was a true and exact copy of the log maintained at the records division and it accurately showed what was shown on the original log sheet. The radio dispatcher was then called and she testified that she made the entries in the original log and that the copy was accurate. Defendant objected to the introduction of the copy. His claim is: "There was no attempt to have the copy certified as required by statute 21–1–1(44) (a) (3) N.M. S.A. (supra), nor was there testimony by the custodian of the records as to its authenticity."

The proof of official records statute [§ 21–1–1(44) (a) (3), N.M.S.A.1953 (Repl.1970)] requires that the record be certified by the officer having custody of the record and under the seal of his office. This was not done. However, subsection c, § 21–1–1(44) (c), N.M.S.A.1953 (Repl. 1970) provides an alternative to the official certification and states, "This rule does not prevent the proof of official records or of entry or lack of entry therein by any other method authorized by law." Another method authorized by law is discussed in Higgins v. Fuller, 48 N.M. 218, 148 P.2d 575 (1944). *Higgins* states that an "examined copy" may be admitted into evidence if the person who made it or who compared it with the original first testifies that it is a copy. Here, the dispatcher testified she made the original entries and that the copy was an accurate copy of the original. The policeman that made the copy testified he compared it with the original and it was an accurate copy. There was a proper foundation for the admission of the log sheet.

## CONSTITUTIONALITY OF THE HABITUAL CRIMINAL STATUTE.

"Appellant [defendant] contends that the Habitual Criminal Statute 40A–29–5–A N.M.S.A. compilation (1969 supp.) [sic] is unconstitutional. It usurps the judicial power of setting sentence and bestows it upon the office of the District Attorney * * *. If the State Prosecutor sees fit to invoke the statute 40A–29–5–A, [sic] then the judge has no choice but to sentence accordingly. Thus, the judicial power of setting sentence is bestowed upon the prosecutor. * * *"

Defendant's contention is that the district attorney is not required to invoke the Habitual Criminal Act, rather, that he has discretion in invoking it. The claim is that such asserted discretion has the practical effect of allowing the district attorney to set the sentence. As stated in the brief:

"Although the above statute [Sec. 40A–29–6, N.M.S.A.1953 (Repl.1969)]. in-

**290**

forms the prosecution of a duty to invoke the habitual criminal act, it does not state that he *must* invoke it. Therefore, in actual practice in the State of New Mexico it is at the discretion of the state prosecutor whether or not he will invoke the Habitual Criminal Statute in any given case. Hence, the prosecutor becomes the one who decides the sentence."

■ There is no merit to the claim that our statutory law gives the district attorney discretion as to whether he will invoke the habitual criminal provision. Section 40A–29–6, supra, states:

"* * * it shall be the duty * * * to file an information charging the person as a habitual offender."

See also § 40A–29–8, N.M.S.A.1953 (Repl. 1969). State v. McCraw, 59 N.M. 348, 284 P.2d 670 (1955) characterizes the Habitual Criminal Act as "mandatory."

■ However, defendant claims that there is, in actual practice, uneven enforcement of the Habitual Criminal Act. Assuming that such is the fact, that fact does not make the law unconstitutional. State v. Lujan, 79 N.M. 525, 445 P.2d 749 (1968); State v. Sharp, 79 N.M. 498, 445 P.2d 101 (1968) and State v. Baldonado, 79 N.M. 175, 441 P.2d 215 (Ct.App.1968).

Further, in this case, the law has been carried out. The district attorney has invoked the Act and defendant has been sentenced, by the court, pursuant to the Act. There has been no unconstitutional application of the Act to this defendant. The claim of unconstitutionality is without merit.

Affirmed.

It is so ordered.

WOOD, J., and La FEL E. OMAN, Justice, Supreme Court, concur.