STATE, Respondent v. O'CONNOR, Appellant

(203 N.W.2d 183)

(File No. 10984. Opinion filed January 4, 1973)

**John E. Simko**, Sioux Falls, for defendant and appellant.

**Gordon J. Mydland**, Atty. Gen., **David Stanton**, Asst. Atty. Gen., Pierre, **Richard Bogue**, State's Atty. of Lincoln County, Canton, for plaintiff and respondent.

HANSON, Justice.

Defendant was convicted of robbery in the first degree. His principal contention on appeal is that witnesses to the crime should not have been permitted to make in-court identifications of him.

In respect to this issue the record shows that during the evening of December 17, 1969 two men wearing ski masks entered the home of Owen Amundson in Canton, South Dakota. Present in the home were Owen Amundson, his wife Marlys, their son David, and a relative, Sally Knowlton. One of the masked men was armed with a revolver and shot the family dog when it barked at their entry. The Amundson family was ordered to go into the basement. While on the way Sally ran out the kitchen door and the armed man went after her. The rest of the family and the other masked man continued into the basement.

After reaching the basement the masked intruder indicated he was after money so Owen opened his billfold and dropped some on the floor. While the man was picking it up Owen realized he was unarmed. Owen then struck him with his fist and a struggle ensued during which Owen was sprayed with a chemical spray agent. The struggle continued part way up the basement stairs and ended with Owen on top of the man with a hammerlock around his neck. Mrs. Amundson was also a participant in the struggle. While the three were on the basement stairs she tore the mask off the man. Both Mr. and Mrs. Amundson then had an opportunity to see and observe defendant almost eyeball to eyeball.

About this time the armed man returned to the house with Sally. She testified after entering the house they stood at the top of the basement stairs and saw the Amundsons struggling with defendant. Defendant was looking directly up at her. His mask was off and she had a good look at him. Shortly afterward the gunman hit both Mrs. Amundson and Sally Knowlton over their heads with his gun. This ended the struggle on the stairs and defendant was released. After his release he went into the basement room where David was making a call to the police. Defendant grabbed the telephone and jerked the cord loose from its socket. In doing so defendant was within 12 to 18 inches from David and he had a good opportunity to look at the man. At this point Mrs. Amundson called out "the police are coming" and the two men fled from the Amundson home.

When the police and sheriff arrived immediately after the occurrence the victims described the unmasked robber as a fairly tall, slim young man with sandy or possibly red hair. He had blue or bluish-gray eyes and a scar over his right eye. This description fits defendant O'Connor. During the trial the Amundsons and Sally Knowlton all positively identified defendant as the unmasked robber.

Prior to trial defendant made a motion to suppress and exclude specific identification of him by the State's witnesses as their in-court identification would be the result of a pretrial photo identification procedure which was suggestive and conducive to misidentification. The trial court denied the motion.

The defendant now contends the trial court erred in denying the motion to suppress in the absence of a full evidentiary hearing. We find no merit in such contention. The suppression issue was, in effect, submitted to the court on stipulated facts contained in affidavits and written briefs referenced to testimony taken at the preliminary hearing. From this source it appears that shortly after the crime was committed and the victims had described the unmasked robber the sheriff showed them 8 to 12 pictures or mug shots of various individuals. Defendant's picture was included. The pictures were shown to the witnesses while all were together in one room of the Amundson home. Each of the

witnesses viewed the pictures separately and each identified defendant from among the group. The sheriff was careful to see that separate identifications were made so no one would influence the others.

During the suppression hearing process there was no suggestion that oral testimony or other evidence was needed or necessary to present the essential facts involved. As stated in defendant's suppression brief the issue was whether "the facts of the case" met the standard established in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, in which the court considered and rejected Simmons' claim that a similar photographic identification procedure was so unduly prejudicial as to fatally taint his conviction. Although the court recognized the inherent danger of possible misidentification by the use of photographs it was unwilling, either under its supervisory powers or as a matter of constitutional requirement, to prohibit an accused's initial identification by the use of photographs. In this respect the court stated:

> "It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image

of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. The standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973 [18 L.Ed.2d 1199, 1206], and with decisions of other courts on the question of identification by photograph."

▪ Ordinarily a trial court should conduct a full evidentiary hearing following a motion to suppress evidence in cases of this nature, but such procedure is not mandatory every time an accused asserts an in-court identification is somehow tainted. As the court concluded in United States v. Poe, 5 Cir., 462 F.2d 195:

"Whether a hearing is to be granted in such cases is a matter within the sound discretion of the district court. In United States v. Sutherland, [5 Cir., 428 F.2d

1152] we did 'suggest' that a hearing was appropriate where there is a claim of an impermissibly suggestive picture spread; however, we reiterated in United States v. Jackson [5 Cir., 451 F.2d 259] that the *Sutherland* procedure was not a strict requirement to be followed in every case. In each case the district judge must determine whether the allegations necessitate an evidentiary hearing."

As guidelines the court went on to suggest an evidentiary hearing should be granted only when the moving papers "enable the court to conclude that a substantial claim is presented" or "only when the allegations, if proven, would justify relief."

■ Under the circumstances, there were no factors shown in the moving papers in the present case which required the trial court to conduct a full evidentiary hearing on defendant's motion to suppress. The undisputed record shows: (1) The perpetrators of a very serious crime were at large and resort to photographic identification was necessary in order to conduct a search; and (2) there was little or no chance the photographic procedure used was impermissibly suggestive or conducive to misidentification as the witnesses all had ample time in which to closely observe defendant after he was unmasked; immediately after the crime the witnesses gave the police a detailed and accurate description of defendant; and each of the witnesses separately identified defendant's picture from among a group of 8 to 12 pictures.

At trial, the State relied on the in-court identification by the four eyewitnesses to the crime. No reference was made to the prior photographic identification. The photographs used were available to and had been examined by defendant before trial. As the court pointed out in Simmons v. United States, supra, the danger of possible initial misidentification by photographs may be substantially lessened by cross-examination at trial by the defendant which would expose to the jury the method's potential for error, if any. Defendant did not avail himself of this opportunity to expose to the jury the potential for error, if any, in the photographic identification procedure used in the present case.

Assuming, without in any sense conceding, the pretrial identification procedure failed to meet the standard established in Simmons v. United States, supra, the in-court identifications were still admissible if arising from an independent source, United States v. Cranson, 4 Cir., 453 F.2d 123; United States v. Butler, 1 Cir., 426 F.2d 1275. The facts amply sustain such a finding. Each witness had an excellent opportunity to closely observe defendant after his mask was removed. Their description of him was accurate and detailed. Their in-court identifications were positive and certain. Such evidence amply sustains a finding their testimony was based upon personal observation of defendant after he was unmasked, untainted by any other source.

We have considered defendant's other assigned errors relating to his motion for a mistrial and to the admission in evidence of a photograph to show defendant's appearance the day after the crime was committed. Finding no merit in either, the judgment appealed from is affirmed.

All the Justices concur.