STATE of South Dakota, Plaintiff
and Respondent,

v.

John Stephen O'CONNOR, Defendant
and Appellant.

No. 11942.

Supreme Court of South Dakota.

April 20, 1978.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Michael A. Lyons, of Doyle & Mahoney, Sioux Falls, for defendant and appellant.

BIEGELMEIER, Retired Justice.*

A jury found defendant guilty of burglary in the third degree, a felony, SDCL 22–32–9, as charged in Part I of an Information, Part II of which alleged prior convictions of five felonies and upon conviction of Part I that he be punished in accordance with SDCL 22–7, our habitual criminal statutes. Defendant appeals and raises questions that require a statement of some of the evidence.

The deputy state's attorney made an opening statement of the evidence the state expected to present to prove the charge. The evidence that followed was that about 1:30 a. m. the night of the burglary a number of police units were called by radio to a building which housed offices occupied by Data, Inc.; that the police recognized an auto in the parking lot as one seen in a burglary two weeks prior thereto; there were two sets of tracks in the fresh snow that led from this car up to the locked door of Data; that while there were no lights inside, the officers heard noises therein like metal rubbing on metal. A squad car public address system requested that anyone in the building come out; after no one appeared and the door was unlocked by an officer of Data, the police searched the premises and found two men in separate rooms, one of whom was Walton, the record owner of the auto, and the other the defendant O'Connor, who was discovered while hiding under a curtain. It was further shown that two holes had been cut in the ceiling that night.

Immediately following the deputy state's attorney's opening statement, defendant's trial attorney (who does not represent him on this appeal) told the jury the defendant would waive his right to be silent and would testify that about 1:00 a. m. while riding around in Walton's car he learned Walton had a key to the Data building; there was talk of burglarizing the place; that defendant tried to persuade Walton not to go into the building, but Walton drove up beside it, opened the door with his key and went in; that after a few minutes defendant became nervous, went up to and rapped on the door to try to get him out; that while they were talking he saw a headlight coming so he ducked into the building, locked the door and tried to hide. Defendant did generally so testify, as did Walton.[1] Defendant further testified he had not been up to the building earlier that evening, though he admitted he had done the damage to the ceiling.

On rebuttal the state produced evidence that a "stakeout" of three officers with binoculars was set up in a building 80 feet away from and with a well-lighted clear view of the Data building; that they kept a watch thereon from 9:00 p. m. until 2:00 a. m., at about 9:15 p. m. they observed defendant drive up to the building, get out of the car, insert a key in the door to the building, pull it open a few inches, close and lock it and drive away; that about 1:30 a. m. the car pulled up and stopped some distance from the building; the lights were shut off; O'Connor and Walton got out of the car simultaneously and walked up to the building; O'Connor unlocked and opened the door and both entered it; that they next saw both men when they were brought handcuffed out of the building.

■ Point I of defendant's argument is based on an assignment of error that the trial court "erred in allowing the States Attorney to use defendant and appellant's silence at the time of arrest * * * for purposes of impeachment of the defendant and appellant's testimony which use is a

---

* In accordance with SDCL 16–1–5.

1. Defendant admitted convictions for five felonies; Walton seven felonies in three states.

Such evidence was admitted as affecting credibility.

violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States of America." Complying with our rules[2] this assignment first cites pages of the transcript where on cross-examination defendant was asked when "police officers discovered you underneath the curtains there and subsequent to that point, did you ever tell those officers that you were just trying to get Mr. Walton out of there? A. No, I didn't tell them anything."[3] The officer who discovered O'Connor testified that he had him stand up and then handcuffed him; that O'Connor said nothing to him; that he turned him over to another officer who took him to a patrol car and read him his *Miranda* rights. No objection was made to any of this evidence. Where no objection is made to evidence, the trial court is not called upon to rule thereon and objection cannot be raised the first time on appeal. *State v. Buffalo Chief*, 83 S.D. 131, 155 N.W.2d 914 (1968); *State v. Gayton*, 83 S.D. 141, 155 N.W.2d 919 (1968); *State v. Halverson*, 87 S.D. 110, 203 N.W.2d 421 (1973); see also *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968). An appeal brings to this court for review only those errors committed by the trial court which appear of record and have been preserved and presented in the manner prescribed by applicable procedural provisions. *State v. Williams*, 84 S.D. 547, 173 N.W.2d 889 (1970).

■ Another page of the transcript is cited that relates to the deputy state's attorney's argument to the jury where he commented on defendant's testimony that when Walton unlocked and opened the door, the defendant said he stood outside talking to him and when the lights from the squad cars appeared he jumped inside the building just to get out of sight; this argument was:

"As far as jumping in, why didn't he just stand out and say, 'Hey, my buddy's drunk, and we wound up here. Let's get him out of here. I'm just trying to help him.' That's all he had to do. He wouldn't have been inside the building. We wouldn't have been here today, . ."

No objection, request for corrective action by the court or motion for new trial was made by defendant. The court in *Fanning v. State*, 85 S.D. 246, 253, 180 N.W.2d 853, 857 (1970) wrote:

"Misconduct of counsel is ground for a new trial, SDCL 23–50; *State v. Brown*, 81 S.D. 195, 132 N.W.2d 840; *State v. Norman*, 72 S.D. 168, 31 N.W.2d 258; *State v. Bechtold*, 48 S.D. 219, 203 N.W. 511, and in the event of denial of a new trial a direct appeal may be taken from the judgment and the denial may be urged as a reason to reverse the judgment. On direct appeals the courts have held such questions not misconduct sufficient to reverse where defendant did not make a motion for appropriate corrective action, such as a motion for a mistrial or request an admonition by the trial court. * * * Claims such questions are prejudicial must be presented to the trial court and they cannot be first raised on appeal * * *."

See also *State v. Goodale*, 86 S.D. 458, 198 N.W.2d 44 (1972).

Defendant cites and largely relies on *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, decided June 17, 1976, which was some time after the trial and sentencing of defendant. In *Doyle* the evidence of defendant's silence at the time of his arrest and after receiving *Miranda* warnings was admitted over continual objections of defendant so as to save his right to claim error on appeal. With reference to the oral argument of the deputy state's attorney, no objection or request for corrective action having been made, the claimed error is not before us.

■ Similarly, with respect to defendant's further contention that a fair trial

---

2. See SDCL 15–29–6, SDCL 23–1–3, SDCL 23–51–7, and *State v. Goff*, 79 S.D. 138, 109 N.W.2d 256 (1961).

3. Defendant testified he had read a lot of law, had written briefs for 50 to 75 penitentiary inmates and had done research for a couple of lawyers.

was denied for overzealous prosecution, the record does not show reversible error.[4] See *State v. Petruzello*, S.D., 250 N.W.2d 682 (1977). Even in the event a motion for a new trial is made, the granting or refusing of the motion (SDCL 23–50–2, 23–51–3, 23–51–17 and 23–51–18) for the claimed misconduct rests largely in the discretion of the trial court. See *State v. Hanley*, 58 S.D. 191, 235 N.W. 516 (1931), and *State v. Olson*, 83 S.D. 493, 161 N.W.2d 858 (1968), where the court set forth the sound reasons for the decision. Not having properly presented it to the trial court, it cannot be first raised on appeal. Cf. *State v. McFall*, 75 S.D. 630, 71 N.W.2d 299 (1955).

Defendant's reply brief suggests that by enactment of SDCL 23–51–7.1 the intent of the legislature permits raising the constitutional questions. That section states:

"The issue of the constitutionality of any statute under which the defendant has been convicted may be raised on appeal regardless of whether or not it was first raised in any lower court."

Assuming the legislature has the authority to enact such a statute affecting a rule adopted or a decision by the court, about which we express no opinion, the cited section does not apply to this appeal. Defendant has been convicted of violation of SDCL 22–32–9, the statute covering burglary in the third degree, the constitutionality of which defendant does not challenge.

■ Defendant claims he was entitled to an instruction submitting to the jury the offense of misdemeanor under SDCL 22–32–16. The court in *State v. Vierck*, 23 S.D. 166, 120 N.W. 1098 (1909), stated that section 571 of the then Revised Penal Code (now SDCL 22–32–16) was "not one of the degrees of the crime of burglary, but is an entirely independent crime, . . ." 23 S.D. at 173, 120 N.W. at 1101. SDCL 22–32–16 expressly states the offense there defined includes conduct "not amounting to

any burglary." This court recently had occasion to discuss this question in *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972), and *State v. Goodale*, supra, where it was held not error to refuse such an instruction. We here decline to overrule those opinions.

After the verdict, at a hearing on the disposition of Part II of the Information, the procedure for which is set out in SDCL 22–7, defendant consented to a trial to the court as to the truth of the allegations, and on a stipulation that defendant was the person named in the five felony convictions alleged, the trial court so found and thereafter sentenced defendant for a term of 16 years in the state penitentiary. The penalty for third degree burglary is not to exceed 15 years. While the record does not set out the reason for the term of 16 years when it could have been for life under SDCL 22–7–1(2), the additional year permits defendant to challenge the application of the habitual criminal statutes.[5] Therefore we turn to those contentions.

■ Defendant, without citation of any authority, claims the trial court erred in denying his motion to dismiss Part II on the ground that our habitual criminal statute, SDCL 22–7–1, is "unconstitutional." That statute does not create a new or independent crime, but declares being a habitual criminal is a status, and thus to be charged with being a habitual criminal is not to be charged with a crime. This court has sustained the constitutionality of the statute. *State v. De Marshe*, 68 S.D. 250, 1 N.W.2d 67 (1941); *Ex Parte Watt*, 73 S.D. 436, 44 N.W.2d 119 (1950); and see also *State ex rel. Smith v. Jameson*, 80 S.D. 333, 123 N.W.2d 300 (1963). "Similar provisions have been contained in state statutes for many years and they have been uniformly sustained by the courts." *Moore v. State of Missouri*, 159 U.S. 673, 676, 16 S.Ct. 179, 181, 40 L.Ed. 301, 303 (1895). See also

---

4. Defendant's argument is largely based on questions to which no objections were made, or the objections sustained, or objections were made after the answers were given and no motions were made to strike the answers.

5. See *State v. Williams*, 84 S.D. 547, 173 N.W.2d 889 (1970), approving the trial courts' discretion in imposing a maximum sentence.

many notes from 58 A.L.R. 20 through 139 A.L.R. 673, and 39 Am.Jur.2d, Habitual Criminals, § 5.

■ Defendant further claims the trial court erred in denying his motion that the state's attorney "produce evidence of [his] unlawful use of the habitual criminal statute [making it] unconstitutional in application as a denial of equal protection." The motion was based on the affidavit of defendant's attorney that he had been in the practice of law in Minnehaha County for over five years; had represented numerous defendants during that time; that he had personal knowledge of felony informations being filed against persons who had previously been convicted of felony crimes, of which he believed the state's attorney's office was aware, where no information was filed under the habitual offender statutes. At the hearing on the motion there was considerable discussion in which the deputy state's attorney stated he thought that whenever they received a "rap sheet" they should file a habitual criminal charge and that he knew it was not always done in any county in this state. Defendant's counsel stated that the law required the state to charge it, that though it was not done in all cases it would not be a basis to attack the constitutionality of it, just because they selectively used it, unless against a certain class who stand trial; that he was not aware of a case where a person in the last five years had been convicted of being a habitual criminal who had stood trial except the defendant, evidently referring to the burglary conviction affirmed in *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972), where prior felony convictions were alleged. (But see *State v. O'Connor*, 87 S.D. 77, 203 N.W.2d 183 (1973), where not alleged.) Defendant's counsel then stated that he had represented a number of criminal defendants against whom habitual criminal informations were filed and withdrawn upon guilty pleas. The colloquy developed into a discussion of the practice of alleging several crimes and taking a guilty plea to

one or a lesser crime; the deputy state's attorney stated that the files in their office would not indicate a pattern alleged by defendant; that no such records were kept.

Defendant's brief argues that it is the duty of the state's attorney to file an information under SDCL 22–7–1 as soon as he learns of qualifying convictions and as discrimination refers to a "case in point" where defendant was jointly charged with Walton who was not informed against as a habitual criminal yet Walton's criminal record is longer and consists of seven more serious felonies than those of defendant's five felonies; that as a probable result of a plea bargain the state moved to dismiss the Data burglary charge against Walton because he had pled guilty to a different burglary and grand larceny and was sentenced to terms of eight and six years thereon. Then, quoting from *State v. O'Connor*, 86 S.D. 294, 194 N.W.2d 246 (1972), the statement that there was not enough precisely detailed evidence to permit the court to "consider and decide important constitutional questions concerning possible unequal and arbitrary enforcement of the habitual offender statute," defendant claims that granting the motion would have provided this evidence.

Passing the hurdle that the public records were open to defendant's attorney to examine or to show the records and facts as claimed by a deposition to raise a question of law and that an application for disclosure of evidence for use at the trial is a matter addressed to the sound discretion of the trial court,[6] and assuming that the record as related in the statements of counsel at the hearing may have shown lax, uneven and selective enforcement of the statute, it was not based on a standard of race, religion or other arbitrary classification and so did not show it was unconstitutionally applied to defendant. The United States Supreme Court in *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), had before it a claim of discrimination based on a record that of six men subject to prosecution as

---

6. *State v. Wade*, 83 S.D. 337, 159 N.W.2d 396 (1968); the documents must be evidential in character, *State ex rel. Wagner v. Circuit Court*, 60 S.D. 115, 244 N.W. 100 (1932).

habitual offenders, petitioner was the only man thus sentenced and that 904 of such known offenders were not sentenced as required by the West Virginia mandatory statutes. After some comment on whether the failure to so prosecute was the result of a deliberate policy or lack of knowledge of the prior convictions, the Court wrote:

"Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged." 368 U.S. at 456, 82 S.Ct. at 506, 7 L.Ed.2d at 453.[7]

The Supreme Court cited *State v. Hicks*, 213 Or. 619, 325 P.2d 794 (1958), cert. den. 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 579, where likewise there was evidence of lack of enforcement by prosecuting attorneys of the Habitual Criminal Act and by penitentiary statistics showing that for 1956 only 8 of 384 inmates and for 1957 only 24 of 984 having prior convictions had been sentenced as habitual criminals. In *Hicks* the Oregon Supreme Court wrote:

"If the failure of prosecutors to enforce the criminal laws as to some persons should be converted into a defense for others charged with crime, the result would be that the trial of the district attorney for nonfeasance would become an issue in the trial of many persons charged with heinous crimes and the enforcement of law would suffer a complete breakdown.

\* \* \* \* \* \*

The contention of the defendant, based as it is on the *Yick Wo* doctrine [118 U.S.

356, 6 S.Ct. 1064, 36 L.Ed. 220], is well-answered in *People v. Montgomery*, 47 Cal. App.2d 1, 117 P.2d 437, 446, as follows:

\* \* \* \* \* \*

'Appellant misconstrues the purport of such decisions as that of the United States Supreme Court in the *Yick Wo* case. It should be borne in mind that in the *Yick Wo* case the equal protection of the law was extended to persons of a particular race to enable them to engage in a lawful business on a basis of equality with all other persons. Appellant now in effect argues from this that equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons. While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. It would be unconscionable, for instance, to excuse a defendant guilty of murder because others have murdered with impunity. The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society. \* \* \* Protection of the law will be extended to all persons equally in the pursuit of their lawful occupations, but no person has the right to demand protection of the law in the commission of a crime.' " 213 Or. at 637, 325 P.2d at 802–04.

From *Sanders v. Waters*, 10 Cir., 199 F.2d 317 (1952), also referred to in the *Oyler* opinion, we quote:

"Further contention is made that the statute violates the equal protection clause of the Fourteenth Amendment to the Constitution because some defendants with prior convictions are prosecuted un-

---

**7.** Accord: *State v. Gerdes*, S.D., 252 N.W.2d 335 (1977), infra; see also *Bordenkircher v. Hayes*, decided January 18, 1978, —— U.S. ——, 98 S.Ct. 663, 54 L.Ed.2d 604, where the Court held the Due Process Clause of the Fourteenth Amendment was not violated when a state prosecutor carried out a threat made dur-

ing plea negotiations to have the accused reindicted on more serious charges under the Habitual Criminal Act on which he was plainly subject to prosecution, if he did not plead guilty to the offense of which he was originally charged.

der the statute and some are not. The contention is without merit. The statute applies equally and impartially to all persons who are charged under it. The fact that indictments or informations do not always charge a violation of the habitual criminal statute where the accused has had prior felony convictions, does not affect the validity of the statute." 199 F.2d at 318.

Accord: *State v. Baldonado*, 79 N.M. 175, 441 P.2d 215 (Ct.App.1968); *State v. Sedillo*, 82 N.M. 287, 480 P.2d 401 (Ct.App.1971); *State v. Thomas*, 16 Wash.App. 1, 553 P.2d 1357 (1976); *People v. Thomas*, Colo., 542 P.2d 387 (1975). The discrimination claims varied in these last cited cases: In *Baldonado*, that the act was not enforced where the former conviction was outside of New Mexico, but was enforced against claimant for an in-state former conviction; in *Sedillo*, that there was uneven enforcement of the act; in *State v. Thomas*, the many reasons given for nonprosecution were where defendants were alcoholic or did not present a danger to community, where the prosecutor's office did not have the expertise to charge the habitual criminal statute, where through plea bargaining the prosecutor promised not to charge under the act, where defendant pled guilty and gave evidence, and where defendant, who pled not guilty, was the only person ever charged as a habitual criminal during the term of the prosecutor; in *People v. Thomas*, that only 30 persons out of a potential group of 3,220 inmates were prosecuted.

The reasoning and result reached here are consonant with *State v. Gerdes*, S.D., 252 N.W.2d 335, decided April 15, 1977, an appeal involving the equal protection clauses of the United States and South Dakota Constitutions, where the court wrote:

"The prosecutor is granted very broad prosecutorial discretion without violating the equal protection clause (citations omitted). The fact that some discrimination is possible is not the test. This could

be true of any prosecutorial discretion." 252 N.W.2d at 336.[8]

The judgment appealed from is affirmed.

WOLLMAN and PORTER, JJ., concur.

ZASTROW and MORGAN, JJ., concur specially.

BIEGELMEIER, Retired Justice, sitting for DUNN, C. J., disqualified.

ZASTROW, Justice (concurring specially).

Although I concur in the affirmance of the defendant's conviction, I feel compelled to comment upon several of the issues wherein the majority opinion reaches the correct results but which I feel deserve further comment.

The majority opinion dismisses the defendant's contentions of overzealous prosecution as not constituting prejudicial error. In my opinion, the conduct of the state's attorney, in several instances, could have constituted prejudicial error had it been allowed over proper objections. The questions and closing argument of the state's attorney regarding Mr. Walton's failure to "tell his story" to the police at the scene were clearly improper comment on the defendant's privilege against self-incrimination. Just as improper were the inquiries of what the defendant had told his attorney, clearly an attempt to invade the attorney-client privilege.

Many questions asked by the state's attorney were a cynical and sarcastic attack on the defendant's inability to remain employed, the quality of employment, his lack of intelligence, defendant's lack of skill as a burglar, and gambling activities being defendant's prime source of income. The line of questioning was not proper impeachment but clearly an attempt to depict the defendant as a person of "bad character" by showing degrading conduct. 3 Wigmore, Evidence § 781 (Chadbourn rev. 1970). The

---

8. This does not intimate that for wrongdoing, laxity or inefficiency of law enforcement, the Court (SDCL 16–19), the Executive (SDCL 3–17), or the Electorate (SDCL 7–7–1.1) may not in appropriate situations have some oversight and jurisdiction over the conduct of the state's attorney.

defendant had previously admitted to five prior felony convictions, and the state elicited the date, type of crime, jurisdiction and length of sentence for each conviction for impeachment.

On those occasions when defense counsel interposed an objection, the trial judge sustained it. There is no reason to believe that had proper objections been made, they would not have likewise been sustained. The conduct, although error, does not appear to have resulted in such a deprivation of due process as would require this court to reverse the conviction in the absence of proper objections, see *State v. Bullis*, 1977, S.D., 255 N.W.2d 290.

The majority opinion follows the ruling of *State v. O'Connor*, 1972, 86 S.D. 294, 194 N.W.2d 246, that SDCL 22–32–16 is not a "necessarily included offense" of SDCL 22–32–9, and that a defendant may not be convicted nor is he entitled to an instruction on the misdemeanor under SDCL 23–45–23 as a matter of law. This position was reiterated in *State v. Goodale*, 1972, 86 S.D. 458, 198 N.W.2d 44, without comment.

In my special concurrence in *State v. Kafka*, 1978, S.D., 264 N.W.2d 702 (handed down April 6, 1978), I set forth in detail the legal and factual tests which must be satisfied before a "necessarily included offense" instruction should be given. Under the complaint in this case, SDCL 22–32–16 meets the "legal test" of a necessarily included offense of SDCL 22–32–9, i. e., (1) the elements of the included offense must be fewer in number than the elements of the greater charged offense; (2) the penalty for the included offense must be less than the greater charged offense in terms of the maximum punishment attached to each offense; and (3) the two offenses must contain common elements so that the included offense must be such that the greater offense cannot be committed without also committing the lesser. See Annot., 11 A.L.R.Fed. 173; 23A C.J.S. Criminal Law § 1288.

However, as was true in *State v. Kafka*, supra, the evidence does not satisfy the "factual test" of a "necessarily included offense." As pointed out in my special concurrence in *Kafka*, the factual test requires that the evidence, when read in the light most favorable to the defendant, would justify a conclusion that the greater offense was not committed and that the lesser offense was in fact committed. In other words, there must be conflicting evidence in regard to the element of the greater offense that is not an element of the lesser.

Here, reading the evidence in the light most favorable to the defendant, his entry made could have been without a "breaking" under our third degree burglary statute. However, entry alone with the requisite intent will constitute third degree burglary and a breaking is unnecessary. The other additional element of third degree burglary, i. e., the building being one in which property is kept, was not in dispute. The building was the repository of some 250,000 to 300,000 blank checks, filing cabinets and office equipment used by one of the tenants in its business. There is no "conflicting evidence" relating to any elements of the greater offense that are not elements of the lesser offense.

The only element in dispute was the "intent" of the defendant at the time he entered the building. The intent required by both SDCL 22–32–9 and SDCL 22–32–16, in these circumstances, is the same. If defendant had the intent to commit larceny or a felony, he was guilty, as the jury found, of third degree burglary; without the "intent," he was guilty of neither third degree burglary nor misdemeanor entry.

It is only by using the "legal test" and "factual test" that the trial court can determine what offenses are or are not "necessarily included" within the charged offense. Because the "factual test" was not satisfied by the evidence at this trial, the court correctly refused the requested instruction.

Finally, I feel compelled to reiterate my position regarding the state's attorney's duties under the habitual criminal act. SDCL 22–7–3 states that the state's attorney is under a mandatory duty "to file an information accusing the said person of

such previous convictions." There is no discretion allowed on the part of the state's attorney for filing such a charge once he has knowledge of a prior felony conviction of a defendant. Likewise, there is no authority for the state's attorney to dismiss the allegation unless, of course, the allegation is untrue or cannot be proven.*

The proper performance of the state's attorney's duties under the habitual criminal statute would obviate any attacks upon the possible discriminatory use of the statute. However, the failure of the state's attorney to perform his statutory duty in other cases can hardly be grounds to reverse the defendant's conviction because he did perform that duty in this case. Although there are sanctions which may lie against the state's attorney who wilfully fails to perform his statutory duty, one of them is not the reversal of a defendant's conviction.

I would affirm the conviction for these reasons and with these above qualifications.

I am authorized to state that Justice MORGAN joins in this special concurrence.

---

\* Dismissal of a habitual criminal charge as part of a plea bargain can occur only with the concurrence of the trial judge. See *State v. Doherty*, 1978, S.D., 261 N.W.2d 677; *State v. Kafka*, 1978, S.D., 264 N.W.2d 702, special concurrence.